THE STATE v. SMITH.

28  565
97  419

1. **Criminal law: POWER OF COURT TO DIRECT ACQUITTAL.** While the trial court may, in a criminal prosecution, direct an acquittal at the hands of the jury where there is no testimony sustaining the charge, or where it is so slight and indeterminate in its nature that a verdict of guilty would be instantly set aside, it cannot thus direct, and thereby usurp the place of the jury to pass upon the sufficiency of the evidence, where there is conflicting testimony of a material character elicited from several witnesses who have testified in the case.

2. —— **ARSON: OF A BARN: WHAT CONSTITUTES.** It seems, that, to constitute a barn within the meaning of the statute against arson, it is not necessary that it should be designed or used, in whole or in part, for the storage of hay, corn or produce of any kind.

3. —— But if this were necessary under an indictment which charged that the building was in fact a barn, it would not be where the indictment was for burning a building " *called* a barn ;" and, in the latter case, it might be shown that the structure burned, though but an outbuilding used solely for sheltering cattle, was, in fact, called and known as a barn by people in that vicinity.

*Appeal from Dubuque District Court.*

FRIDAY, APRIL 29.

ARSON. —— The property destroyed is described as a " certain building there situate called a *barn*, belonging," etc. As to what the building was, whether a barn, a stable or a cow shed, the testimony is very conflicting. It was

16x45 feet, made of posts, ten feet high, with split rails nailed to them; was thatched and covered with straw; had three doors, and could be closed or shut up tight. It was not used for horses, but for cows, sheep, etc. Some of the witnesses speak of it as a stable; others as a cattle shed; and still others as a barn. One says, "I would not call it a barn, but an old cow shed." Another (a German) says, "Americans call it a barn; we call it a good shed; I should suppose Americans always call it a barn; I call it a good cattle shed." By the half dozen or more witnesses who give it a name, it is referred to not less than fifteen or twenty times as a stable, and about as often as a barn. The testimony is silent as to whether hay, corn, or other produce was or was not kept in it. Nor does it appear whether any part of the building was or was not designed for the keeping of such provender.

In this state of the proof the court gave this instruction: "The indictment charges the defendant with setting fire to a *barn*. The evidence shows that the building was a cattle stable or shed; there is consequently a fatal variance between the indictment and the evidence, and you will render a verdict for the defendant." To this instruction the State excepted, and because of alleged error therein (acquittal following as of course), prosecutes this appeal.

*H. O'Connor*, Attorney-General, for the State.

No appearance for the appellee.

WRIGHT, J.—We are very clear that this instruction was erroneous. It took from the hands of the jury a question of fact as to whether there was conflict in the testimony, and which it was their province, and not that of the court, to determine. The State, equally with the prisoner, has a

1. CRIMINAL LAW: power of court to direct acquittal.

right to the opinion or verdict of the jury upon any question of fact which the testimony leaves in doubt. If this is not so, then as well abolish this method of trial.

Of course we do not say that the court might not direct an acquittal when there is *no testimony* sustaining the charge, or when it is so slight and indeterminate in its nature that a verdict of guilty would be instantly set aside. Not so, however, where there is conflict, and especially upon a question like that now before us.

As to these propositions there can be controversy. They are among the fundamentals of the law touching trial by jury in this country, and authorities, though most abundant, need not be cited in their support.

It is suggested, however, that as matter of law, in any view of the testimony, this was not a *barn*, because it was 2.——arson: of used exclusively for cattle or stock, no part a barn; what constitutes. of it being designed or used for hay, corn or other provender; that without this latter design or use it could not be a barn. In this view we do not concur.

The law punishes the willful and malicious burning of any * * * *barn, stable,* * * * *out-house*, or *any building whatever* of another. Rev. 4226. In this case the pleader describes the property as a " certain building *called a barn.*" It is not charged that the defendant burned *a barn* in its possible technical sense, but a building *called* a barn. That the testimony tends to show that it was *called* this, is clear beyond all room for controversy. If the prisoner burned this building, and this building was called a barn, he was guilty, and the jury should have so found. And this was what it' was their right and duty to determine, and not the court's. Any other rule would, to say no more, make the command of the statute as to disregarding errors or defects which do not affect substantial rights (§ 4925) a dead letter.

But we go further and say, that the jury not only had

a right under the testimony to determine whether this was a building *called* a barn, but to decide whether it did not *in fact* fill the legal idea of such a building in the statute punishing arson. At common law, to burn a barn would not be arson unless it had in it hay or corn. This was also true under the act of 1767, in Pennsylvania, which followed the common law. There, however, the rule was changed and the burning of a barn was an offense, without reference to its contents. *Commonwealth* v. *Chapman*, 5 Whart. 427; and see *Samper* v. *Commonwealth*, 5 id. 385; 3 Chitty Cr. Law, 868; 1 Bishop Cr. Law, 306. At the common law, too, arson was the malicious *burning* of another's *house*, the words burning and barn being understood in a technical sense. In many of the States we find what are known as statutory burnings, and offenses thereunder are by no means confined to houses, as at common law, or to technical felonious burning. They seem to comprehend that kind of · burning which, at common law, constituted merely a misdemeanor, as well as those which were arsons or felonies. *Allen* v. *The State*, 10 Ohio St. 287, 302; and see note to § 43; 2 Bishop Cr. Law; also Whart. Cr. Law, § 1668; 1 Bouvier's Law Dict. 123, and cases there cited.

With us, the offense now under consideration is the burning of the building, whether barn, stable, or outhouse. And it is or may be a barn, whether used to receive the crop, for the stabling of animals, or other purposes. Bouvier's Dict. Lexicographers tell us that it is a covered building for receiving grain, hay, or other productions of the farm, and that in the northern states of this country the farmers generally use these buildings also for stabling their horses or cattle, so that among them a barn is both a corn-house and a stable. Webster's Dict., title Barn. And, hence, most reasonably and naturally, one of the witnesses in the case says : " Americans would

call this building a barn, we (Germans) call it a good shed, or good cattle shed." In accord with this testimony, we are justified in saying, is the experience and observation of us all. A building which in one part of our country would be known or called a shed, a stable, a barrack, in another would be styled a barn. Some include in the word " barn," as used in common conversation, buildings which others, by reason of differences of education, or other influences, would never think of thus designating. With us it is well known that many persons are accustomed to call every structure, whether used for stabling horses, cows, or stock of any kind, and whether designed for the storage of provender, or not, a barn. The statute must be construed in view of this meaning of the word, as accepted, at least to some extent, by the community. And especially in view of the statute, as already suggested, which punishes the burning of any "*building* whatever of another;*"* and when the indictment declares that the building burned was *called* a barn, a stable, a shop, an outhouse, or any thing else, proof is competent that it is thus called and designated, though it may be used for a purpose other than that indicated. The effect of this proof is for the jury.

We conclude, therefore, that as matter of law, it was not necessary, to make this or any other building a barn, that it should be designed or used, in whole or in part, for the storage of hay, corn, or provender of any kind. And even if necessary, where the indictment should charge that the building was *in fact a barn* (which we are far from admitting), this is not so when it is alleged that the building was *known or called a barn*, as in this case.

In view of the law and the record, the instruction was erroneous. The question of fact should have been submitted to the jury.