THE STATE v. JETER.

1. INDICTMENT—ARSON—CRIM. CODE, SECS. 140, 159, 166.—An indictment which charges that the defendant "did feloniously, willfully, and maliciously set fire to a certain house, to wit: the fodder house and corn crib of one Charles Smith, and by the kindling of such fire the aforesaid fodder house and corn crib was then and there feloniously, willfully, and maliciously burned and consumed, against the form of the statute in such case made and provided, &c.," does not charge the crime of arson, or a violation of Criminal Code, secs. 140, 159, or 166.

2. WORDS.—The word "barn," in Criminal Code, section 140, construed not to mean or include "fodder house and corn crib."

Before TOWNSEND, J., Spartanburg, January, 1896. Reversed.

Defendant, Hiram Jeter, indicted and convicted of arson. Motion in arrest of judgment, refused. Defendant appeals.

*Messrs. Thomason & Bomar,* for appellant, cite on first point: Bish. on Crim. Law, sec. 81, *et seq.;* 1 Arch. Cr. Pl. & Pr., 267; *State* v. *Henderson,* 1 Rich., 184; *State* v. *May,*

1 Brev., 160; *State* v. *O'Brannon*, 1 Bail., 144; *State* v. *Evans*, 18 S. C., 138; *State* v. *Shirer*, 20 S. C., 408. On second: *State* v. *Laughlin*, 8 Jones Law (N. C.); 2 Am. & Eng. Ency. Law, 126, note; *State* v. *Hadler*, 2 McC., 377; *State* v. *Berry*, 2 Bail., 17; *State* v. *Foster*, 3 McCord, 444; *State* v. *McLain*, 2 Brev., 443.

*Solicitor Schumpert*, contra, filed no argument.

June 18, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The defendant was tried before the Court of General Sessions, under an indictment, which, omitting the purely formal parts, reads as follows: "That one Hiram Jeter, late of the county and State aforesaid, on the 26th day of November, in the year of our Lord one thousand eight hundred and ninety-five, with force and arms, at Spartanburg Court House, in the county and State aforesaid, did feloniously, willfully, and maliciously set fire to a certain house, to wit: the fodder house and corn crib of one Charles Smith, and by the kindling of such fire the aforesaid fodder house and corn crib was then and there feloniously, willfully, and maliciously burned and consumed, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid." The jury found a verdict of guilty, with a recommendation to mercy, and the motion for a new trial having been made and refused, the defendant then moved in arrest of judgment on the following grounds: 1st. Because the indictment failed to charge either the common law or statutory crime of arson, and hence no judgment for that offense could be rendered. 2d. Because the indictment is fatally defective, in that it charges no crime or offense known to the laws of this State. 3d. Because, if the indictment charges any such offense at all, it can only be in violation of either section 159 or section 166 of the Criminal Statutes of South Carolina, as incorporated in the Revised Statutes of South Carolina, and could only be sentenced under the provisions

of those sections.   This motion was overruled by his Honor, Judge Townsend, and the defendant was sentenced to ten years imprisonment in the State penitentiary.

From this judgment defendant appeals, upon the several grounds set out in the record, which need not be repeated here, as we propose to consider the several questions which we understand to be presented by such grounds.   The first question is, whether the indictment sufficiently charges the offense created by section 140 of the Criminal Statutes, incorporated in the Revised Statutes of 1893.   That section reads as follows: "The willful and malicious setting fire to or burning any house, of whatever name or kind, within the curtilage or common enclosure of any house or room wherein persons habitually sleep, whereby any such dwelling house or sleeping apartment shall be endangered; also, the willful and malicious setting fire to or burning any court house, or other public building, whether owned by the State or a corporation, or a building owned by an individual or individuals, and kept or let for public meetings or exhibitions, barn, stable, coach house, gin house, storehouse, warehouse, grist or saw mill, railroad depot, coach or cotton factory, or other house used for manufacturing purposes, of whatever name or kind; or setting fire to or burning any house habitually used for public religious worship, shall be deemed arson, whether the setting fire to or burning be in the day or night time;" and the section then proceeds to declare that the punishment for such offense shall be death, unless the jury, in their verdict, recommend the prisoner to the mercy of the Court, in which case the punishment shall be reduced to imprisonment in the penitentiary for a term not less than ten years.

Although the "Case" does not disclose the grounds upon which the Circuit Judge overruled the motion in arrest of judgment, yet, as the indictment, on its face, purports to have been framed under the section above set out, and sentence was passed in conformity to its provisions, it is obvi-

ous that the Circuit Judge must have held the indictment valid under the provisions of that section; and, hence, our primal inquiry is, whether there was error in so holding? The rule of criminal pleading is that, in framing an indictment under a statute, great particularity should be observed in setting forth clearly and distinctly all of the ingredients mentioned in the statute as going to make up the offense. It is scarcely necessary to cite authority to sustain this well settled rule, but if any should be desired, it can be found in the *State* v. *Evans,* 18 S. C., 137, and the cases there cited. For instance, in the *State* v. *O'Bannon,* 1 Bail., 144, it was held that: "In setting out an offense against a statute, the defendant must be brought within all the material words of the statute, and nothing can be taken by intendment." So, in *State* v. *Henderson,* 1 Rich., at page 184, it was said: "Every indictment must contain and set forth all the ingredients of an offense, and no omission in such statement can be supplied by evidence or inuendo." Again, in the *State* v. *McKitterick,* 14 S. C., at page 353, it was said: "An indictment is the complaint of the State against the accused. * * * It should charge some offense cognizable by the Court, ánd this offense, whatever it may be, should be clearly and distinctly set forth. The crime charged should be described with certainty, for (as is said in that standard authority, Chitty on Crim. Law, at page 172), 'no latitude of intention will be allowed to include anything more than has been expressed.'" Upon these authorities it was held, in *State* v. *Evans, supra,* that where the indictment alleged a burglary in "a gin house, situate within the curtilage of the dwelling house," the judgment must be arrested, because the indictment failed to allege that the gin house was within 200 yards of the dwelling house, and appurtenant to it, two averments that were essential under the statute. In the light of these authorities, let us examine the section set out above, under which this indictment was manifestly framed, with a view to ascertain whether any of the ingredients necessary to make up the offense of arson, denounced

by such section, is wanting in this indictment. It is obvious that the section may be divided into two branches—first, that which declares it to be arson to set fire to or burn any house "within the curtilage or common enclosure of any house or room wherein persons habitually sleep, whereby any such dwelling house or sleeping apartment shall be endangered." It is obvious, therefore, that two of the necessary ingredients to constitute the offense denounced by the first branch of the section are, first, that the house burned is within the curtilage or common enclosure of the dwelling house or sleeping apartment; and, second, that the burning of the house endangered such dwelling house or sleeping apartment. Now, in this indictment there is no allegation of either of these necessary ingredients of the offense, and hence it is clear that the indictment is insufficient, under the first branch of the section. The second branch of the section declares the willful and malicious setting fire to or burning of any of the houses therein designated to be arson, and does not contain either of the ingredients, above stated as necessary to constitute the crime of arson under the first branch of the section. So, that the only inquiry here is, whether the house alleged in the indictment to have been burned—fodder house and corn crib—falls properly within any one of the classes of houses designated in the second branch of section 140 of the Criminal Statutes. It is quite certain that a fodder house and corn crib cannot possibly fall within any of the classes of the houses designated in the second branch of the section, unless it be the class designated as a barn or stable. Surely a fodder house and corn crib cannot, with the least propriety, be designated as a stable; and, as it seems to us, it would be straining the terms used by the Legislature to an extent wholly unwarranted in construing a criminal pleading, to hold that the term "barn," used in the statute, should be regarded as meaning a fodder house and corn crib. This would be giving a latitude to a *supposed* intention, in order

to make the term used in the statute include more than it properly expresses; which, as we have seen, would be in violation of one of the maxims of criminal pleading, which has been above cited. But, in addition to this, we are not without direct authority in favor of the view which we have adopted. In the case of the *State* v. *Laughlin*, 8 Jones Law (No. Ca.), 354, cited by counsel for appellant, it was held that a structure such as that designated in this indictment as a fodder house and corn crib, could not be regarded as a barn, under the statute making it a felony to burn a barn. See, also, *State* v. *Jim* (a slave), 8 Jones Law (No. Ca.), 459. So, also, in the case of the *State* v. *McLain*, 2 Brev., 443, it was held that the word "pig" not being in the act of assembly against hog stealing, an indictment for stealing a pig could not be sustained. If the word "pig" cannot be construed to be a hog, within the terms of that criminal statute, it is difficult to see how a fodder house and corn crib can be construed to be a barn, within the meaning of the statute under which the indictment is framed. We are, therefore, of opinion that the indictment was insufficient to sustain a charge of violating either branch of section 140 of the Criminal Statutes, and that there was error in not so holding.

It is suggested, however, that the indictment may be sustained either under section 159 of the Criminal Statutes or, if not, then under section 166 of those statutes. Section 159 reads as follows: "Whoever shall maliciously, unlawfully, and willfully burn, or cause to be burned, cut, or cause to be cut or destroyed, any untenanted or unfinished house or building of [or?] any frame or frames of timber of any other person, made and prepared, or hereafter to be made or prepared, for or towards the making of any house or houses, so that the same shall not be suitable for the purposes for which it was prepared; and any tenant or tenants at will, for years or for life, who shall willfully and maliciously cut, deface, mutilate, burn, destroy or otherwise injure any dwelling house, outhouse, erection,

building or crops then in possession of such tenant or tenants, shall be deemed guilty of a misdemeanor," &c.    Here, again, this section may be divided into two branches—the first declaring it to be a misdemeanor to burn any untenanted or unfinished house, or any frame of timber made or prepared for the making of a house, so that the same shall not be suitable for the purpose for which it was prepared; and the second declaring it to be a misdemeanor for any tenant at will, for years or for life, to burn any house then in the possession of such tenant.    But as the indictment in this case contains no allegation that the house alleged to have been burned was untenanted or unfinished, or that it was a frame of timber prepared for the making a house by which burning it was rendered unsuitable for the purpose for which it was prepared, it is quite certain that the indictment cannot be sustained under the first branch of section 159; and, as it is not alleged in the indictment that the defendant was either a tenant at will, for years or for life, then in the possession of the building alleged to have been burned, it is equally certain that the indictment cannot be sustained under the second branch of said section.

It only remains to consider whether the indictment can be sustained under section 166 of the Criminal Statutes. That section, as incorporated in the Revised Statutes of 1893, reads as follows: "Whoever shall, willfully, unlawfully, and maliciously cut, mutilate, deface or otherwise injure any tree, house, outhouse, fence or fixture of another, or commit any other trespass upon real property in the possession of another, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined and imprisoned at the discretion of the Judge before whom the case shall be tried;" but the compiler of the Revised Statutes has omitted to note, at that point, that the section had been amended by the act of 1892, 21 Stat., 93, and again by the act of 1893, 21 Stat., 411, by reducing the punishment to a fine not exceeding $100, or to imprisonment not exceeding thirty days, when the damage to such property does not

exceed the sum of $20, so as to bring prosecution under this section within the jurisdiction of a trial justice—though it is due to the compiler to say that these amendments are noted by him at section 14 of the Criminal Statutes.   The same provision is also to be found in the subsequent amendatory act of 1894, approved 5th January, 1895, 21 Stat., 824.   So that, as the law now stands, and as it stood at the time when the offense charged against the defendant was alleged to have been committed, prosecutions like this for a violation of section 166 were exclusively cognizable by a trial justice (or, since the new Constitution was adopted, by a magistrate), unless there was an allegation that the damage to the property exceeded the sum of $20; and there is no such allegation in this indictment.   Hence, even if it should be conceded that the indictment here could be regarded as a prosecution for a violation of section 166, the Court of General Sessions would have had no jurisdiction, and could not, therefore, render any judgment.

We must conclude, therefore, that, in any view of the case, there was error in refusing the motion in arrest of judgment.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the motion in arrest of judgment be granted.