# Jackson *v.* The State.

## *Arson of Corn Crib.*

[DECIDED APRIL 19, 1906, 40 So. REP. 979.]

1. *Arson; Buildings; Barn; Corn Crib; Variance.*—Under an indictment charging arson of a corn crip, proof of the burning of a barn or frame building of two stories, with shingle roof and sheds all around in which was kept wagons, stock, fodder, farming utensils and other things about the plantation, and in one room of which was corn partitioned off, was a variance and insufficient to support a conviction under the indictment (§ 4337, Code 1896.)

APPEAL from Barbour Circuit Court.

Heard before Hon. A. A. EVANS.

The indictment in this case was in the following language: The grand jury of said county charged that before the finding of this indictment that Beverly Jackson, alias Beverly Green, wilfully set fire to or burned a corn crib, the property of Emmet Lamar, against the peace and dignity of the State of Alabama. The proof showed that the building destroyed by fire was a large two-story

frame building with a shingled roof with sheds running around the side and the rear of the barn, all under one roof. In it was stored all the grain of every description raised and used on the plantation, such as corn, oats, hay and fodder. The sheds around the barn were used for stalls for the horses, mules and cows and also for the storage of buggies, wagons and harness. In fact the witness testified that everything used about the plantation was kept in this barn. That there was one room in the building partitioned off as a corn crib and used to store corn in. The court in his oral charge to the jury said: "That if there was a room in said building partitioned off and built for the storage of corn raised on the plantation and was so used, then such room was a corn crib; and that such room was a corn crib, although other parts of the building under the same roof may have been used for the storage of grain and hay other than corn, and vehicles for the farm and gear and for the stalls for horses, etc. The defendant requested the court to give the jury the general affirmative charge and also the following written charges, all of which the court refused. 1st. If the jury believe from the evidence that the house burned was not a corn crib, they must find the defendant not guilty. 2. If the jury believe from the evidence that the house burned was not a corn crib as defined by the court, they must acquit the defendant.

A. H. MERRILL, for appellant.—Section 4337 of the Code of 1896 names quite a number of houses and other things the burning of which constitutes arson in the second degree. If the indictment charges the burning of any of these a conviction can only be had upon proof that the character of house charged in the indictment as burned was burned.—*Thomas v. State*, 116 Ala. 461.

The description of the house burned makes it certain that a corn crib was not burned. The definition of the corn crib is, according to dictionaries, "a small building raised on posts for storing corn." The definition of a barn is "a covered building for securing grain, hay, flax, and other productions of the earth. In the northern

[Jackson v. The State.]

states of America the farmers generally used barns also for stabling their horses and cows so that among them a barn is both a corn house or grain and a stable." Hence, the building burned under the evidence was not a corn crib but a barn.

The charges requested should·have been given.

MASSEY WILSON, Attorney General for State.—The testimony clearly shows that the building was a corn crib within the terms of the statute, Sec. 4337, Code 1896.—*Brown v. State*, 52 Ala. 245; *ex parte Vincent*, 26 Ala. 145; 6 Cyc. 188.

DENSON, J.—Section 4337 of the Code of 1896 provides that "any.person, who willfully sets fire to, or burns * * * any car, car-shed, cotton-house, or cotton-pen containig cotton, or corn-crib or corn-pen containig corn, or any barn, stable, shop, or office, within the curtilage of any dwelling-house, * * * is guilty of arson in the second degree," etc. It seems from the language of the statute that a distinction is clearly marked between the terms "corncrib" and "barn"; that the two were regarded by the Legislature as separate and distinct structures. While it was arson at the common law to burn a barn in a field, if it contained hay or corn, it is only by statute that the crime has been extended to include, either expressly or impliedly, the burning of corncribs.—*State v. Smith*, 28 Iowa, 565; *Sampson v. Com.*, 5 Watts & S. (Pa.) 385; *State v. Sutcliffe*, 4 Strob. (S. C.) 372; 4 Bl. Com. 221; 1 Hale, P. C. 567; *State v. Millican*, 15 La. Ann. 557; *State v. Jeter*, 47 S. C. 2, 24 S .E. 889; *Cook's*

It was expressly held in Jeter's Case, supra, that corncribs were not included in the prohibition of setting fire to or burning any barn, etc. Thus it seems that the courts have clearly drawn a distinction between the two structures; and the distinction is emphasized when we come to give the definition of the terms as they are taken from the lexicographers and are understood in common parlance. "A barn is a covered building designed for the storage of grain ,hay, flax, or other farm produce. In America barns also usually contain stabling for horses and cattle." Century Dictionary; Webster's Interna-

[Jackson v. The State.]

tional Dictionary; *State v. Laughlin,* 53 N. C. 354; *State v. Cherry,* 63 N. C. 493; *State v. Smith,* 28 Iowa, 565. "Crib" is defined as a box or bin, or similar wooden structure, for storing grain, salt, etc.; as a crib for corn or oats And "corncrip" is defined as a crib for storing corn. Webster's International Dictionary; Century Dictionary. In *Thomas v. State,* 116 Ala. 462, 22 South. 666, this court said: "The words 'corn-crib' and 'corn-pen' have well understood and definite meanings. Everybody understands what a corncrib is and what a corn pen is." And it was there decided that a cabin which had been used for human habitation up to a month or two before the alleged attempt to burn it, and that, being unoccupied, the owner deposited in it some corn and forage, which remained in it until the time of the alleged attempt to burn it, was not a corncrip containing corn. In *Brown v. State,* 52 Ala. 345, cited by the Attorney-General, the defendant was indicted for burning a corncrib prior to the enactment of a statute making the burning of a corncrib, eo nomine, arson. The prosecutor testified that the building burned was a crib in which he kept corn and fodder, and in which he then had corn and fodder. All that was decided by that case was that such a crib was undoubtedly such a structure as fell within the meaning of the words "house" or "building" as those words were used in section 3699 of the Revised Code of 1867—*Simpson's Case,* 111 Ala. 6, 20 South. 572.

In the case at bar the owner of the building burned in his testimony described it as follows: "The building destroyed by fire was my barn, a large two-story frame building with a shingled roof, with sheds running around the sides and the rest of the barn, all under one roof. In it was stored all the grain of every description raised and used by me on the plantation, such as corn, oats, hay, and fodder. The sheds around the barn were used for stalls for my horses, mules, and cattle, and also as storage for my buggies and wagons, harness, and gear. I kept everything used about the plantation and lot in the barn. There was one room in the building partitioned off as a corncrib. It was made for and used as a corncrib. My corn raised on the plantation was stored

in the barn." The description is strikingly similar to the definition of a barn quoted above. See, also, the description given in *Cherry's Case, supra*. The fact that one room in the building was "partitioned off" as a corncrib, that it was made for and used as a corncrib, and that his corn was stored in it, could not overcome all the other features of the building and characterize it as a corncrib. To the contrary, the crib was not the building at all, but was only a room in the building. The defendant is indicted for burning a corncrib, and this essentially means a building or structure in its entirety, and not a room or apartment in a building or structure. Looking to the description given of the building, its construction, and the uses to which it was put, we cannot escape the conclusion that the building burned was a barn, and should have been so described in the indictment. In this view of the case there was a fatal variance in the allegations of the indictment and the evidence. It follows that charge 3 (the general affirmative charge) requested by the defendant should have been given, and for the refusal to give it the judgment of conviction must be reversed, and the cause remanded.

It is not necessary to consider any other assignment of error.

Reversed and remanded.

WEAKLEY, C. J. and HARALSON and DOWDELL, JJ., concur.