2541

The STATE, Appellant v. Keith Antonio SCURRY, Respondent.
(473 S.E. (2d) 61)

Court of Appeals

---

[2] Because we affirm on this ground, we do not address the State's remaining arguments.

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General William Edgar Salter, II,* Columbia; and *Solicitor W. Townes Jones, IV,* Greenwood, *for appellant.*

*Assistant Appellate Defender Robert M. Pachak,* of the *South Carolina Office of Appellate Defense,* Columbia, *of respondent.*

Heard July 5, 1996.

Decided July 18, 1996.

*Per Curiam:*

The respondent, Keith Antonio Scurry, was indicted by the Greenwood County Grand Jury for armed robbery. The indictment alleges Scurry robbed the Handy Pantry Food Store on April 3, 1994, "while armed with a deadly weapon, to wit: a tire tool." He was tried by a jury at the December 1994 term of court. Defense counsel moved for a directed verdict at the close of the State's case, and again after all the evidence was presented, on the ground the evidence did not support the statutory charge of armed robbery, but only common-law robbery. The court denied both motions. The jury returned a verdict of guilty on the armed-robbery charge. After the verdict, Scurry moved for a mistrial "based upon the fact that the evidence does not substantiate the verdict in this case." The

court denied the motion and sentenced him to ten years imprisonment.

Two days later, the trial judge sua sponte held a hearing and issued a written order in which he vacated Scurry's conviction for armed robbery, directed a verdict of guilty of robbery,[1] and sentenced Scurry to ten years. The order states the court should have granted a directed verdict on the armed-robbery charge at trial inasmuch as there was no evidence Scurry intended to use the tire tool as a deadly weapon as required under S.C. Code Ann. § 16-11-330 (Supp. 1995). The State appeals. We vacate the trial court's order.

On appeal the State argues the trial judge (1) did not have subject matter jurisdiction to grant any relief to Scurry based upon the insufficiency of the evidence; (2) erred in finding Scurry's postverdict motion for a mistrial adequately challenged the sufficiency of the State's evidence; and (3) erred as a matter of law by granting Scurry postverdict relief based upon the insufficiency of the evidence.

## FACTS

At approximately 5:30 a.m. on April 3, 1994, a man entered the Handy Pantry store on Main Street in Greenwood. The individual had a towel around his face and was carrying something in his hand wrapped in a towel. The female clerk testified the man jumped over the counter, pointed the object he had in his hand at her, which she assumed to be a sawed-off shotgun, and ordered her to open the cash register. She stated she was frightened and opened the register as ordered. The man removed approximately sixty dollars from the register and jumped back over the counter. As he headed out the door, he dropped the covered object. The clerk then observed it was a tire iron. She gave a description of the robber to the police. A store videotape of the robbery was introduced into evidence and played for the jury.

Scurry called the Greenwood Police Department later that morning and stated he had robbed the Handy Pantry and wanted to turn himself in. Scurry gave a statement to the po-

---

[1] It is not absolutely clear that this was the intent of his order. The order states: "[t]he jury's verdict of guilty of Robbery stands and [Scurry] is sentenced to serve a term of 10 years with the South Carolina Department of Corrections on his conviction of Robbery."

lice in which he admitted robbing the store because he needed money to buy crack cocaine to support a serious drug addiction. Scurry also testified at trial. He admitted robbing the store to get money to buy drugs and stated he took the tire iron with him in case he needed to pry the cash register open. He testified he turned himself in because he is not a violent person and it bothered him to have scared the store clerk.

## LAW/ANALYSIS

South Carolina Code Ann. § 16-11-330(A) (Supp. 1995) proscribes the crime of armed robbery and states the following:

> A person convicted for the crime of robbery while armed with a pistol, dirk, slingshot, metal knuckles, razor, *or other deadly weapon* must be imprisoned for a mandatory minimum term of not less than ten years nor more than thirty years, no part of which may be suspended or probation granted. A person convicted under the provisions of this subsection is not eligible for parole until he has served at least seven years of his sentence. (Emphasis added.)[2]

A deadly weapon is generally defined as "any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Campbell*, 287 S.C. 377, 339 S.E. (2d) 109 (1985) (holding gasoline could be considered a deadly weapon.) Our armed-robbery statute does not require the display of a deadly weapon. *State v. Nix*, 288 S.C. 492, 343 S.E. (2d) 627 (Ct. App. 1986) (defendant pointed something under his shirt at store clerk and demanded money).

The question of whether an instrument used in the commission of a robbery qualifies as a deadly weapon, thereby qualifying the incident as armed robbery, is a factual determination for the jury. *State v. Tasco*, 292 S.C. 270, 356 S.E. (2d) 117 (1987) (toy gun allegedly used in robbery; victim stated he thought it was a real gun); *State v. Heck*, 304

---

[2] The General Assembly recently enacted Senate Bill 90, effective May 29, 1996, which adds to the definition of armed robbery "alleging, either by action or words, [being] armed while using a representation of a deadly weapon or any object which a person presents during the commission of the robbery reasonably believed to be a deadly weapon." This amendment does not apply to the case before us today.

S.C. 345, 404 S.E. (2d) 514 (Ct. App. 1991) (use of BB gun in robbery.)

Rule 19, SCRCrimP, provides for the granting of a directed verdict based on the insufficiency of the evidence. The Rule states that the "submission of any charge to the jury shall constitute a denial of any motion for directed verdict previously made by the defendant and not ruled on." We know of no precedent, and Scurry has cited none, that gives the trial court authority to change its mind after a guilty verdict has been returned and thereafter, on its own motion, grant a directed verdict of innocence as to the same charge.

Over a century ago, our Supreme Court held that in a criminal case, a motion for a new trial is the only available posttrial motion addressing the sufficiency of the evidence. *State v. Dawkins*, 32 S.C. 17, 10 S.E. 772 (1890). This principle was reaffirmed in *State v. Miller*, 287 S.C. 280, 282, 337 S.E. (2d) 883, 884 n. 2 (1985). *See also* 21 Am. Jur. (2d) *Criminal Law*, §§ 522-524 (1981). Manifestly, the trial court had no authority to vacate Scurry's armed-robbery conviction and sentence him as if the jury had convicted him of common-law robbery.

Accordingly, the order of the trial court is vacated and Scurry's armed-robbery conviction and sentence are reinstated. Because we decide this case on jurisdictional grounds, we need not address the other grounds argued by the State for reversal.

Vacated.

CURETON, ANDERSON and STILWELL, JJ., concur.