558 S.E.2d 917

**The STATE, Appellant,**

v.

**Linda Thompson TAYLOR, Respondent.**

**No. 3425.**

Court of Appeals of South Carolina.

Heard Dec. 4, 2001.

Decided Dec. 17, 2001.

Rehearing Denied Jan. 17, 2002.

Certiorari Granted May 30, 2002.

154

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Randolph Murdaugh, III, of Hampton, for appellant.

L. Scott Harvin, of Hetrick Law Firm, of Walterboro, for respondent.

ANDERSON, J.

Linda Thompson Taylor was charged with two counts of unlawful issuance of a fictitious motor vehicle driver's license. A jury returned a guilty verdict for both counts. The trial judge sentenced her to six months' imprisonment and a $2,500 fine on one count, provided that upon service of three months or the payment of $1,000, the balance of her sentence was suspended and she was placed on probation for two years. The trial judge also ordered Taylor to perform 100 hours of public service. Taylor received a concurrent six-month sentence for the other count, which was suspended during probation. Following the verdict, Taylor filed post-trial motions and the trial judge issued an order of verdict in arrest of judgment and entry of judgment of acquittal. The State appeals, arguing the trial judge committed error of law in setting aside the guilty verdicts. We reverse and reinstate the convictions.

## FACTS/PROCEDURAL BACKGROUND

Thompson was an employee of the South Carolina Department of Motor Vehicles ("DMV") and worked in the DMV's office in Walterboro. Thompson's arrest arose out of an investigation conducted by the South Carolina Law Enforce-

ment Division concerning illegal aliens obtaining fraudulent driver's licenses. Pursuant to this investigation, Special Agent Terry Hoffman observed Lila Macias and Armando Ramirez, accompanied by Maria Cortez, enter the DMV office in Walterboro on April 24, 1998, around 3:00 p.m. Macias, Ramirez, and Cortez left the DMV office at approximately 5:00 p.m. and drove away in a car driven by Cortez. The Highway Patrol initiated a traffic stop of the car and seized brand new driver's licenses from Macias and Ramirez.

Macias testified she was a native of Mexico and worked at a restaurant in Goose Creek. Someone at the restaurant told Macias that they knew "how to get driver's licenses" and that she could obtain a driver's license from the DMV without providing documentation for $1,000. On the afternoon of April 24, 1998, Macias and Ramirez met with Cortez and she drove them to the Walterboro DMV to obtain driver's licenses. Macias testified she took an eye exam, had her photograph taken, and paid the application fee, but did not take either a written or driving test. Macias identified Taylor as the individual who processed her application and issued her a driver's license. Macias testified Taylor never requested her social security card or any immigration papers.

Ramirez, who is also from Mexico, testified he traveled to the DMV on April 24, 1998, with Cortez and Macias to obtain a driver's license. Ramirez testified that "[a]nytime someone wanted a license they need to call Maria Cortez," and that for $1,000 she would assist them in getting a license without having to provide any type of documentation. Ramirez was issued a license by Taylor without taking a written or driving test and without presenting a social security card or other identification.

John Romagando was working undercover for SLED on April 24, 1998, and went to the Walterboro DMV to conduct surveillance. Romagando observed Macias and Ramirez at the DMV counter where Taylor was working that afternoon. Romagando testified he never observed either Macias or Ramirez take a driving test. Additionally, Constance Johnson, an employee at the Walterboro DMV, testified that she observed Taylor assisting some "Hispanic" people on the

afternoon of April 24th and that she did not see the individuals take a driving test.

Several DMV employees testified regarding the procedures used to obtain a driver's license in South Carolina. To receive a license, an applicant must provide a birth certificate or social security card, take an eye examination, and take both a written and driving test. The results of these tests are noted on DMV Form 447. Form 447 is then sent from the local DMV to the DMV office in Columbia.

Wanda Graham, a DMV field administrator in Columbia, testified she was unable to locate a Form 447 for Macias or Ramirez. The DMV's computer records did not indicate that any type of application was filled out by Macias or Ramirez.

In September 1999, Taylor was tried for two counts of unlawful issuance of a fictitious motor vehicle driver's license, in violation of S.C.Code Ann. § 56–1–515(1). At the close of the State's case, Taylor moved for a directed verdict and the trial court denied this motion. The jury returned guilty verdicts on both counts and Taylor was sentenced by the trial judge.

On November 8, 1999, a hearing was held before the trial judge regarding Taylor's post-trial motions for a verdict in arrest of judgment and for a new trial and entry of judgment of acquittal. On November 18, 1999, the trial judge issued an order of verdict in arrest of judgment and entry of judgment of acquittal. The State appeals this order.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law. *State v. Cutter*, 261 S.C. 140, 199 S.E.2d 61 (1973). "It is undisputed that the State may appeal where the verdict is set aside wholly upon an error of law." *State v. Dasher*, 278 S.C. 395, 400, 297 S.E.2d 414, 417 (1982) (internal emphasis omitted).

## LAW/ANALYSIS

The State argues the trial court committed an error of law in issuing an order of verdict in arrest of judgment and entry of judgment of acquittal after the jury returned a verdict

finding Taylor guilty of two counts of the unlawful issuance of a fictitious motor vehicle driver's license. We agree.

In a criminal case, "[t]he only post verdict fact-based remedy available ... is a motion for a new trial." *State v. Miller*, 287 S.C. 280, 285, 337 S.E.2d 883, 886 (1985) (Ness, J., concurring in part and dissenting in part) (citation omitted); *see also State v. Dawkins*, 32 S.C. 17, 24–25, 10 S.E. 772, 773 (1890) (affirming the trial judge's denial of defendant's post-trial motion in arrest of judgment, holding "the [defendant's] remedy would have been by a motion for a new trial, and not by motion in arrest of judgment."). The trial judge in a criminal matter has no authority to grant a judgment notwithstanding the verdict, and has only limited authority to issue a verdict in arrest of judgment.

## I. Judgment Notwithstanding the Verdict (JNOV)

As an initial matter, we note that a motion for a JNOV in a criminal case is not recognized in this state. *Miller*, 287 S.C. at 285, 337 S.E.2d at 886 (Ness, J., concurring in part and dissenting in part) (noting it was improper for trial counsel to move for a JNOV, a civil motion, in a criminal trial and pointing out the impropriety of a criminal JNOV). Our Supreme Court has held that the trial judge in a criminal case committed an error of law in directing a verdict of not guilty after the jury had returned a guilty verdict:

There is no precedent in this State for such action. This is not a case in which a trial judge has granted a new trial upon the facts (a power which he admittedly has) but rather one in which a trial judge had entered a verdict of not guilty in the face of conflicting evidence (a power he has never had in this jurisdiction) .... To affirm this decision is to grant unprecedented license to trial judges to invade the area where the jury system has been deemed most effective—that is, in assessing the truthfulness of fellow human beings testifying under oath.

*Dasher*, 278 S.C. at 399–400, 297 S.E.2d at 416 (1982) (internal emphasis omitted). There is no precedent that "gives the trial court authority to change its mind after a guilty verdict has been returned and thereafter, on its own motion, grant a

directed verdict of innocence as to the same charge." *State v. Scurry*, 322 S.C. 514, 518, 473 S.E.2d 61, 63 (Ct.App.1996).

## II. Motion for A New Trial

It is well settled that the grant or refusal of a new trial is within the sound discretion of the trial judge. *State v. Simmons*, 279 S.C. 165, 303 S.E.2d 857 (1983). "Where there is no evidence to support a conviction, an order granting a new trial should be upheld." *State v. Smith*, 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993) (citation omitted). "However, where there is competent evidence to sustain the jury's verdict, the judge may not substitute his judgment for that of the jury." *State v. Prince*, 316 S.C. 57, 63, 447 S.E.2d 177, 181 (1993) (citation omitted).

## III. Verdict in Arrest of Judgment and Entry of Judgment of Acquittal

A trial court in a criminal matter has only limited authority to issue a verdict in arrest of judgment:

There are two motions available to defense counsel following a guilty verdict in a criminal case. He may move for verdict in arrest of judgment to prevent entry of judgment on the grounds of the insufficiency of the indictment or some other fatal defect appearing on the face of the record. He may *not* move for verdict in arrest of judgment based on the sufficiency of the evidence to sustain the allegations in the indictment. Secondly, he may move for a new trial upon the facts. Thus, the trial judge has no authority to grant relief on factual grounds after a verdict of guilty that is equivalent to the relief he could have granted at the directed verdict stage.

*State v. Miller*, 287 S.C. 280, 286, 337 S.E.2d 883, 886–87 (1985) (Ness, J., concurring in part and dissenting in part) (citations omitted) (emphasis in the original).

Our courts have recognized the authority of a trial court to grant a verdict in arrest of judgment to prevent entry of judgment on the insufficiency of the indictment or some other fatal defect appearing on the face of the record. *Id.* at 286, 337 S.E.2d at 886 (Ness, J., concurring in part and dissenting in part); *State v. Brown*, 201 S.C. 417, 23 S.E.2d

381 (1942) (ruling that motion for arrest in judgment should have been granted where trial court did not have jurisdiction to impose sentence); *State v. Cooler*, 30 S.C. 105, 8 S.E. 692 (1889) (finding that the fact a juror was a member of the grand jury that indicted defendant was not grounds for arrest of judgment); *State v. Jeter*, 47 S.C. 2, 24 S.E. 889 (1896) (holding trial court erred in denying defendant's motion for arrest of judgment where indictment was insufficient); *State v. Blakeney*, 33 S.C. 111, 11 S.E. 637 (1890) (affirming trial court's denial of defendant's motion for arrest of judgment where indictment was sufficient). However, a defendant "may *not* move for verdict in arrest of judgment based on the sufficiency of the evidence to sustain the allegations in the indictment." *Miller*, 287 S.C. at 286, 337 S.E.2d at 886-87 (Ness, J., concurring in part and dissenting in part) (citing) *State v. Hamilton*, 17 S.C. 462 (1882) (emphasis in the original).

A "motion for arrest of judgment" is a postverdict motion made to prevent the entry of a judgment where the charging document is insufficient or the court lacked jurisdiction to try the matter. It has been held that a motion in arrest of judgment is distinguishable from a motion to quash an indictment, in that reasons sufficient to sustain the quashing of an indictment may be insufficient to sustain a motion in arrest of judgment. However, it has also been held that a motion in arrest of judgment is a post-trial motion to quash an indictment.

...[W]hen ruling on a motion in arrest of judgment, the trial court is limited to rectifying trial errors, *and cannot make a redetermination of the credibility and weight of the evidence.*

21 Am Jur.2d *Criminal Law* § 785 (1998) (emphasis added) (footnotes omitted).

 In the present action, Taylor was indicted and tried for the unlawful issuance of fictitious motor vehicle driver's licenses pursuant to § 56-1-515(1), which provides that "[i]t is unlawful for any person to alter a motor vehicle driver's license so as to provide false information on the license or to sell or issue a fictitious driver's license." Taylor contends the trial court's order granting her motion for verdict in arrest of judgment was proper because the State failed to produce sufficient evidence that she "issued" the license, or

that they were "fictitious." Because it is inappropriate for the trial court to grant a motion of a verdict in arrest of judgment based on the sufficiency of the evidence, the trial court erred in granting Taylor's motion. Moreover, the State presented sufficient evidence that Taylor issued the fictitious licenses in violation of § 56-1-515. Both Macias and Ramirez testified they obtained a driver's license from Taylor without providing proper identification, documentation, or taking the written and driving examinations; therefore, there was sufficient evidence for the jury to conclude the driver's licenses were fictitious and that Taylor issued them.

## CONCLUSION

We hold that a circuit judge may issue an order granting a *POST-TRIAL* motion for a *VERDICT IN ARREST OF JUDGMENT AND ENTRY OF JUDGMENT OF ACQUIT-TAL* to prevent entry of judgment on the grounds of the insufficiency of the indictment or some other fatal defect appearing on the face of the record. The circuit judge may *NOT* issue an order granting a *VERDICT IN ARREST OF JUDGMENT AND ENTRY OF JUDGMENT OF ACQUIT-TAL* based on the sufficiency of the evidence to sustain the allegation in the indictment.

Accordingly, we reverse the trial court's order and reinstate Taylor's convictions.

**REVERSED.**

CONNOR and HOWARD, JJ., concur.