Larry REIMNITZ, Petitioner-Appellant,

v.

STATE'S ATTORNEY OF COOK COUNTY, Respondent-Appellee.

No. 84–2488.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1985.

Decided May 2, 1985.

Kenneth N. Flaxman, Chicago, Ill., for petitioner-appellant.

Kevin Sweeney, Cook County State's Atty., Chicago, Ill., for respondent-appellee.

Before CUDAHY and POSNER, Circuit Judges, and BROWN, Senior District Judge.[*]

POSNER, Circuit Judge.

This case is a fine illustration of the protracted and complex—some might say the fouled-up—character of modern American criminal procedure. The history of the case begins 10 years ago, in January 1975, when Larry Reimnitz's wife was found strangled. They had been married for five months and his wife had complained about his close relationship with a former student (Reimnitz is a schoolteacher), David Spangler. Although suspected of the crime, Reimnitz maintained his innocence and was not charged. Then in August 1975 Reimnitz sexually assaulted Spangler, who told the police, who reopened their investigation of the murder and asked Reimnitz to come to the police station. Reimnitz did so, after consulting his lawyer; and at the police station, after being questioned for seven hours, talking with his wife's mother and with his pastor, and being (he contends) promised leniency if he confessed, Reimnitz confessed to having strangled his wife while resisting her sexual advances. The questioning continued for another five hours, and he elaborated his confession. He was charged with murder, convicted in an Illinois state court, and sentenced to 50–100 years in prison.

At his trial, evidence of the homosexual assault on Spangler was admitted to illuminate the motive for the murder, along with the confession. On appeal Reimnitz contended that both items of evidence should have been excluded. The appellate court agreed that the evidence of the homosexual act should have been excluded, and reversed for a new trial, but declined to reach the question whether Reimnitz's confession had been involuntary and therefore inad-

missible. *People v. Reimnitz*, 72 Ill. App.3d 761, 29 Ill.Dec. 117, 391 N.E.2d 380 (1979). The court invited the parties to introduce further evidence on the issue at the new trial.

Instead of conducting a new trial, the trial court dismissed the charges against Reimnitz on the ground that the prosecutor's effort to introduce evidence of the homosexual act was such serious prosecutorial misconduct as to bar a retrial. The state appealed, and the appellate court reversed and remanded. 97 Ill.App.3d 946, 53 Ill.Dec. 265, 423 N.E.2d 934 (1981). Reimnitz then moved to dismiss the indictment on double-jeopardy grounds and to suppress the confession. No further evidence was presented on the voluntariness of the confession, and the trial judge adhered to the earlier ruling that it was admissible, and he also rejected Reimnitz's double-jeopardy argument. Reimnitz asked the Illinois Supreme Court for a mandamus to bar his retrial but the court turned him down and he then filed this habeas corpus action. As he had been out on bail since the reversal of his conviction (after having served more than two years in prison), he named as the respondents in the action the state's attorney and circuit court of Cook County. The state's attorney, representing both respondents, successfully moved the district judge to dismiss the circuit court from the case on the ground that it was not a person within the meaning of the habeas corpus statute, but the judge refused to dismiss the state's attorney as respondent; held on the merits that retrying Reimnitz would not violate the double-jeopardy clause of the Fifth Amendment (which has been held to be applicable to the states by virtue of the Fourteenth Amendment); and denied his petition without considering the voluntariness of his confession. 596 F.Supp. 47 (N.D.Ill.1984). Reimnitz appeals.

In February of this year, shortly before the argument of the appeal, Reimnitz was retried after we denied his motion

[*] Hon. Wesley E. Brown of the District of Kansas, sitting by designation.

to stay the trial pending decision of the appeal. He was convicted of voluntary manslaughter and sentenced to four and a half years in prison, but he is to be released shortly, on the basis of the time he served under his original conviction. His release will not moot this habeas corpus proceeding, however. The release will not be unconditional; the first year will be "mandatory supervised release." Also, the collateral consequences of Reimnitz's conviction for voluntary manslaughter, such as the possibility that the conviction might someday be used to enhance his punishment for a later crime, are enough to keep the proceeding alive after his release from custody. See, e.g., *Lane v. Williams*, 455 U.S. 624, 632, 102 S.Ct. 1322, 1327, 71 L.Ed.2d 508 (1982); *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *McCollum v. Miller*, 695 F.2d 1044, 1047–48 (7th Cir.1982). But the state argues that Reimnitz's conviction for voluntary manslaughter mooted this case by making it impossible for him to get the relief he sought in it and that in any event he now has an adequate remedy in the state system (an appeal from the manslaughter conviction) which precludes us from deciding this appeal. We disagree. If Reimnitz was retried in violation of the double-jeopardy clause, the judgment of conviction entered in that trial is invalid and must be set aside; and it would hardly do to subject him to further delay and uncertainty while he pursues his remedies in the state court system, merely because this court let the state retry him while his appeal to us was pending. Although many cases emphasize the harm to a person of being retried that is distinct from the outcome of the retrial, the more dramatic consequence of retrial—conviction—affords as clear a case for relief on double-jeopardy grounds as any. Relief from the second conviction is a conventional remedy sought in double-jeopardy cases—dramatically so in a case like *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), where the second trial had ended in a death sentence.

■ This does not get us past the threshold, though, since we must still consider the state's argument that we have no power to render an effective judgment because Reimnitz is not in the custody of the state's attorney. The habeas corpus statute does not say who shall be named as respondent in a habeas corpus petition but implies, quite naturally since habeas corpus challenges the lawfulness of the petitioner's custody, that it shall be the person who has that custody. See 28 U.S.C. § 2242. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts makes this explicit; see also the Advisory Committee's Note to the rule. Although it has been settled for some time now that a person out on bail is still in custody for purposes of the habeas corpus statute, see, e.g., *Hensley v. Municipal Court*, 411 U.S. 345, 353, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973); *Delk v. Atkinson*, 665 F.2d 90, 93 (6th Cir.1981), on the theory that he is still under restraint (of a sort), the statute and rules make no provision for that case. A person released on his own recognizance is usually considered to be in his own custody; a person released after posting bail is usually considered to be in either his lawyer's custody or the bondsman's custody. But it would be odd to make any of these the respondent in a habeas corpus action. A further complication is that in Illinois a bondsman or bonding company is rarely used; the accused simply puts up 10 percent of the amount of the bond, and is released. If he jumps bail the 10 percent cash deposit is of course forfeited, and in addition he is liable for the other 90 percent. See Ill.Rev.Code 1981, ch. 38, ¶ 110–7.

■ Whoever operates the local jail (the Sheriff of Cook County, in this instance) has potential custody, which would ripen into actual custody if the accused violated the terms of bail and was recommitted. So maybe the Sheriff should be the respondent. Another possible respondent, as implied in *Hensley v. Municipal Court, supra*, 411 U.S. at 351, 93 S.Ct. at 1574, is the court that admitted the petitioner to bail and can revoke it, which in this case is

indeed the circuit court of Cook County. The state's argument that the "person" to which the statute and rules refers must be a natural person is hard to fathom, especially since (1) the statute and rules were not drafted with reference to the situation presented when a petitioner is out on bail; (2) the state concedes, albeit grudgingly, that the chief circuit judge of Cook County—regarded as an office rather than a living person—would have been a proper respondent; (3) state courts are frequently named as respondents in federal habeas corpus actions without objection. Besides *Hensley*, see, e.g., *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). But the state's attorney is not the proper respondent, since he in no sense is a custodian of the persons whom he prosecutes.

The truth is that no one has custody of a person who is out on bail but that the Supreme Court has decided that such a person should be allowed to seek unconditional freedom through an action for habeas corpus despite the absence of a custodian. The important thing is not the quest for a mythical custodian, but that the petitioner name as respondent someone (or some institution) who has both an interest in opposing the petition if it lacks merit, and the power to give the petitioner what he seeks if the petition has merit—namely, his unconditional freedom. From this practical standpoint the court that admitted the petitioner to bail, represented in the habeas corpus action by the prosecutor who wants to keep the petitioner from getting unconditional freedom, is a logical respondent. *Hensley* supports this conclusion. The municipal court that had convicted Hensley allowed him to remain free on his own recognizance while he tried to get his conviction set aside. His petition for habeas corpus named the municipal court as respondent, and though the Supreme Court did not discuss the propriety of his doing this, it is hard to believe that the issue would have escaped the Court's notice if Hensley had named the wrong respondent; after all, the issue was jurisdictional. Far from questioning the propriety of naming

the municipal court as the respondent, the Supreme Court remarked that Hensley's "freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice," 411 U.S. at 351, 93 S.Ct. at 1574—which implies that the municipal court was indeed his custodian.

■ Our conclusion that the circuit court of Cook County is the proper respondent would justify us in simply reinstating it as a respondent while dismissing the state's attorney as a respondent (cf. *Mullaney v. Anderson*, 342 U.S. 415, 416–17, 72 S.Ct. 428, 429–30, 96 L.Ed. 458 (1952))—were it not for developments since the appeal was filed. Reimnitz is no longer in the custody of the circuit court. He is in jail awaiting release under supervision. His custodian is either the Sheriff of Cook County or the Illinois Department of Corrections, and neither is or has ever been a respondent in this action. But that makes no difference. Rule 23(a) of the Federal Rules of Appellate Procedure forbids a transfer of custody while a habeas corpus suit is pending, without court authorization, here never requested or granted; and a transfer made in violation of the rule does not divest us of our jurisdiction over the action. *Cohen v. United States*, 593 F.2d 766, 767 n. 2 (6th Cir.1979). So all we need do to preserve our jurisdiction is to reinstate the circuit court as respondent. Nevertheless, if we were minded to grant the writ of habeas corpus, we would first notify Reimnitz's present custodian and give him a chance to be heard; but as we are not, there is no purpose in spinning out this proceeding further.

■ The parties agree as they must that the petition for habeas corpus was not premature merely because filed before Reimnitz was retried. Although it is very difficult as an original matter to understand the good sense of a system in which a person who has been convicted of murder, has won a reversal of his conviction, and has been ordered retried may go into the courts of another sovereign and litigate the issue

whether he can be retried—with the result that, as in this case, six years elapse between the reversal and the retrial—there is no longer any doubt that a state criminal defendant who has a colorable double-jeopardy claim can do just that. See *Justices of Boston Municipal Court v. Lydon*, —— U.S. ——, 104 S.Ct. 1805, 1810–11, 80 L.Ed.2d 311 (1984) (plurality opinion); cf. *Richardson v. United States*, —— U.S. ——, 104 S.Ct. 3081, 3083–84, 82 L.Ed.2d 242 (1984). The burden of a second trial is one of the harms that the double-jeopardy clause is intended to prevent, and a harm that (unlike the harm of conviction) is irreparable once the second trial has been conducted. See, e.g., *United States ex rel. Stevens v. Circuit Court*, 675 F.2d 946, 947–48 (7th Cir.1982). One may question whether this harm justifies the delays that are entailed by trying to prevent it—delays incurred in every case in which a retrial is ordered in the face of a colorable claim of double jeopardy, even though in the vast majority of cases the claim is ultimately rejected. It seems a high price to pay to eliminate a small possibility of an unremedied constitutional violation. But it is a price the courts have decided to pay.

It is true that, now that Reimnitz has been retried and convicted, the harm of the second trial has become irreparable; and it might seem therefore that the appeal would have to be dismissed as moot. But as we said earlier, we do not think our action in allowing the retrial should moot his claim that the retrial was improper. For if he is right, the conviction entered in that trial was void, and he must be released unconditionally, and without the blot of a criminal record. So he has something to gain from this appeal, though less than if the retrial had been postponed.

■ We come at last to the merits of Reimnitz's claim of double jeopardy. The reversal of a conviction because of trial error does not prevent the state from retrying the defendant. This is so even if the error consists of the improper admission of evidence and the remaining evidence in the case is not sufficient to support a conviction. *United States v. Tranowski*, 702 F.2d 668, 671 (7th Cir.1983). Therefore even if the Illinois Appellate Court when it reviewed Reimnitz's conviction had held that the confession was involuntary as well as that the admission of evidence of his homosexual assault on Spangler was improper, Reimnitz could have been retried. His argument is just that the appellate court must pass on all claims of error to ensure that the second trial will be the last trial. For suppose that on the appeal from his conviction on retrial the court holds that the confession was involuntary after all, and remands for another trial. That would be the third trial. If instead of two errors in the first trial there were 100, the state could retry Reimnitz 100 times if only one error were corrected on each appeal and every retrial ended in conviction—could retry him even more than this, if new errors crept into any of the subsequent trials.

■ Although there must be some limit to the number of times the state can retry a person in the quest for an error-free trial, we do not think the limit is zero, which is Reimnitz's contention. Criminal defendants are frequently tried more than once on the same charges, because of hung juries (on which see *Richardson v. United States, supra*, 104 S.Ct. at 3085–86) or reversals on appeal. Five trials were held not too many in *United States v. Dooling*, 406 F.2d 192 (2d Cir.1969), though surprisingly without citation to the Second Circuit's earlier opinion in *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (2d Cir.1965), which had held that three trials were too much. *Wilkins* shows that, if need be, there are constitutional arguments available to a defendant who can make a claim of prejudice (beyond just worry and inconvenience) from being retried (perhaps best thought of, though, as due process rather than double-jeopardy arguments, cf. *United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982)) —and also shows that they are not available to Reimnitz, who argues for a per se rule.

It is premature to conclude that Reimnitz will be retried more than once. On the appeal from his second conviction (the one just entered), the state appellate court may affirm, holding the confession voluntary after all; and that will be the end of his trials. If and when the state puts Reimnitz through too many hoops he can complain, and we will give attentive consideration to his claim. But the danger of harassment is not so great that we must lay down a flat rule that a state appellate court must decide all assignments of error. It would not foster pleasant relations between state and federal courts for us to impose so humiliating a restriction on the freedom which every court claims to decline to reach difficult questions not inescapably presented.

Reimnitz argues that the Illinois Appellate Court "ducked" the issue of the voluntariness of the confession for an improper reason: to give the prosecutor a chance to put in new evidence that the confession was voluntary. But there was no impropriety. The court if it had reached the issue of voluntariness could have decided that the record was insufficiently clear to allow the issue to be resolved, and could have remanded for a further hearing. Reimnitz's rights under the double-jeopardy clause would not have been infringed by such an order. Reimnitz had testified that during the questioning that led up to his confession the police indicated to him that he was unlikely to be sent to jail—that he would be hospitalized instead. The police denied this but admitted having given him the Illinois homicide statutes to read, showing that there were various gradations of homicide. A responsible appellate court could decide that since the case had to be retried anyway there ought to be a further hearing on the admissibility of the confession, a critical part of the state's evidence.

Finally, we must decline Reimnitz's invitation to decide whether the confession was involuntary. The state courts have a right to decide this issue before the federal courts. We have reached the merits of Reimnitz's double-jeopardy claim because when he brought his habeas corpus action he had exhausted all his remedies under state law for being placed in what he contended was double jeopardy by being retried. Nor had he, at the time, any state remedies against the admission of what he contended was an involuntary confession, since the conviction based on that confession had been reversed. But his challenge to the confession was, and is, distinctly premature. Only after he was convicted a second time, in part on the basis of the confession, did his challenge to its admission raise a litigable issue—one which he can and must pursue in the first instance in the state courts, by way of appeal from the conviction, before asking the federal courts to set the conviction aside. See 28 U.S.C. § 2254(b) (exhaustion of state remedies); *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam).

The judgment of the district court is modified to replace the state's attorney of Cook County by the circuit court of Cook County as respondent, and as so modified is

Affirmed.