**UNITED STATES of America ex rel. Edwardo RIVERA, Petitioner,**

v.

**SHERIFF OF COOK COUNTY, Respondent.**

**No. 97 C 3581.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 17, 1998.

Frederick F. Cohn, Chicago, IL, for Petitioner.

Terry L. McDonald, Renee Goldfarb, Cook County State's Attys., Chicago, IL, Romano D. DiBenedetto, Dakoff and DiBenedetto, Niles, IL, for Respondent.

### REVISED MEMORANDUM OPINION

GRADY, District Judge.

Before the court is Edwardo Rivera's petition for a writ of habeas corpus based on the Double Jeopardy Clause. For the reasons explained below, the petition is granted.

### BACKGROUND

On March 30, 1993, Weydowing LaPorte, Jacqueline Vicario and Samuel Ponte were driving home from a movie around midnight when a car pulled up behind them and shone bright lights into their car. The second car then pulled alongside them, and a man with a mustache and goatee fired gun shots into their car, killing LaPorte. One month later, petitioner was arrested and charged with the crime. Petitioner was tried before a judge rather than a jury. The main evidence presented against him was the testimony of Jacqueline Vicario.

At trial, petitioner's attorney elicited testimony from Vicario that indicated the bright light adversely affected her vision during the crime. About 35 days after the crime, Vicario viewed a photographic spread and, that evening, she was shown a line-up. Tr., 38–39. Her testimony also implied that the line-up procedures were suggestive. For example, Vicario identified petitioner out of a line-up in which he was the sole person with a mustache and goatee.

Q: And in fact none of the other men in the line up had a goatee, did they?

A: No they didn't.

Q: Huh?

A: No they didn't.

Q: So you were only shown one picture of one man in a line up who had a goatee, correct?

A: Yes.

Transcript of the Proceedings, Oct. 5, 1994(Tr.), 39. Vicario also stated that she only picked petitioner out of the line-up after having seen his photograph and having been told that that very person would be in the line-up.

Q: [The police officer] told you that the person whose picture you picked out you were going to see in the line up?

A: Yes.

Q: And he told you that your job at the line up was to see if the person whose picture you were on was in fact in the line up?

A: Yes.

Q: And so you went to the line up and you said to the police officer, 'the man whose picture I picked out I now see him in the line up,' correct?

A: Yes.

Tr., 38–39. Vicario also admitted at trial that she told private detectives—who she thought were police officers—that she was unsure about the identification she had made.

> Q: Well did they, let me ask you this question: Let me ask you what, were these questions put to you and did you give these answers.
>
>> Question: 'If you were sworn under oath in a Court of law before a judge or jury and they said is this the man who shot [the victim] in front of you, could you positively say it was or absolutely say it was him?'
>>
>> Answer: 'No.'
>>
>> 'Are you sure?'
>>
>> Answer: 'Yes.'
>>
>> Question: 'No way?'
>>
>> Answer: 'No.'
>
> Were those questions and answers put to you?
>
> A: Yes.
>
> Q: So you told them that you weren't sure, correct?
>
> A: Yes.

Tr., 36.

> Q: You thought [the detectives] were from the police right?
>
> A: Yes.
>
> Q: So you told people who you thought were, in your opinion, part of the Chicago police that you were not sure about your identification, correct?
>
> A: Yes.
>
> Q: And you told people who you believed that you were doubtful about your ability to make an identification?
>
> A: Yes.

Tr. at 49.

The other witness in the car stated that the petitioner resembled the assailant, but only offered a tentative identification. *See*

Respondent's Ex. H, at 5. Petitioner testified that he did not commit the crime. On November 10, 1995, the trial judge found petitioner guilty of murder, attempted murder and aggravated discharge of a firearm. He permitted petitioner to remain free on bond until sentencing.

Petitioner filed a motion for a new trial, arguing that Vicario's identification was insufficient evidence on which to convict him. On January 13, 1995, after hearing oral arguments, the trial judge granted the motion for a new trial.

> The Court: This being a single witness identification case in essence the law is a single witness must convince the trier of fact beyond a reasonable doubt of that identification.
>
> Next going over the transcripts and listening to arguments the Court is of the opinion that the Court could have made a mistake in this case.
>
> And this being a murder case I am not going to take the chance of my mistake leading this man to be wrongfully convicted.
>
> I am going to grant his motion for me to reconsider. I will vacate the finding of guilt, reinstate his plea of not guilty. And I am going to order that he be back here to stand trial before another Judge in this courtroom on February 6th.

Transcript of the Proceedings, Jan. 13, 1995, 6–7. Petitioner filed a motion for double jeopardy discharge before the new judge, but the motion was denied. Remaining free on bond,[1] petitioner appealed that decision. The Illinois Appellate Court affirmed the judgment, and the Illinois Supreme Court denied a Petition for Leave to Appeal.

***DISCUSSION***

■ A federal court may grant a writ of habeas corpus when, under a state court judgment, a person is held in custody in

---

1. Even though petitioner is free on bond, he is still in "custody" under § 2254. *See Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (establishing that a person released on bail on his own recognizance is in custody for purposes of the habeas statute because he is still under restraint); *Delk v. Atkinson,* 665 F.2d 90, 93 (6th Cir.1981) (holding that petitioner was in custody even though he was free on bail when he filed his habeas application based on double jeopardy grounds); *see also Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir.1985) (recognizing that a person out on bail is still in custody for purposes of the habeas corpus statute).

violation of the United States Constitution. 28 U.S.C. § 2254 (1996); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996). Before a federal court will consider the merits of a habeas petition, the applicant must exhaust the remedies available to him in state court. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir.1994). The applicant also must fairly present any federal claims in state court first, or risk procedural default. *Verdin v. O'Leary*, 972 F.2d 1467, 1472–73 (7th Cir.1992).

▆ Under the federal habeas statute, a State court's findings of fact are presumptively correct. 28 U.S.C. § 2254(e)(1).[2] A petitioner may challenge them, but the facts are rebutted only by clear and convincing evidence. *Id.* As to legal issues, this court may grant a writ of habeas corpus only when the lower court's holding is "contrary to" or an "unreasonable application of" United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1) & (2).[3]

▆ Petitioner argues that the second trial subjected him to double jeopardy and thus, violated his rights under the Fifth and Fourteenth Amendments. *See* U.S. Const. amend. v. & XIV. He relies on *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), for the proposition that when a trial court grants a motion for a new trial on the basis that there may be reasonable doubt of the defendant's guilt, the Double Jeopardy Clause mandates that the defendant cannot be retried. It is undisputed that petitioner has exhausted his state court remedies.

Respondent argues that the Double Jeopardy Clause does not bar retrial because the

trial judge's order was not an acquittal. First, the judge may have ordered the new trial in order to correct procedural errors that occurred during the first trial. For example, in petitioner's written motion for a new trial, he argued that the evidence was insufficient to sustain a conviction, that hearsay testimony was erroneously admitted, and that admission of other evidence denied him due process. If trial errors were the basis for ordering the new trial, the Double Jeopardy Clause does not bar retrial. *See Tibbs v. Florida*, 457 U.S. 31, 40, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (explaining that a defendant whose conviction has been set aside as a result of a defect in the trial may be retried because society would pay too high a price if a retrial were barred in those circumstances).

Petitioner replies that the only issue he orally argued before the trial court was whether the evidence, in particular Vicario's hesitant identification of petitioner, was sufficient to sustain his conviction. Transcripts of the proceeding support this contention. *See* Respondent's Ex. H. The trial judge's statement, made immediately following oral arguments, referred only to the sole witness testimony and the need to be convinced of the identification beyond a reasonable doubt. The judge stated that he had reviewed the *transcripts* —a fact that suggests evidentiary review—and considered the *oral* arguments. At that point, he expressed his concern that he had made an error and that petitioner could have been "wrongfully convicted." Petitioner argues that the phrase "wrongful conviction," implies innocence, not a case where proof of guilt had been sufficient but a new trial was necessary because of trial defects. At no time did the judge even suggest that a trial error was the reason for granting

**2.** Section 2254(e)(1) reads:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**3.** The language of 28 U.S.C. § 2254 reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

the new trial. We find clear from the record that the judge vacated the conviction because, in light of the evidence, he was not convinced beyond a reasonable doubt of petitioner's guilt.

Respondent next argues that even if the judge was unconvinced by the evidence, that does not necessarily signify an acquittal barring retrial under the Double Jeopardy Clause. Relying heavily on *Tibbs v. Florida,* respondent says there is a distinction between ordering a new trial because the evidence is insufficient to convict and ordering a new trial because the weight of the evidence is unconvincing to the judge. In the former case, the Double Jeopardy Clause precludes retrial because it means that no reasonable fact finder could have voted to convict the defendant. *Hudson,* 450 U.S. at 44–45, 101 S.Ct. 970 (citing *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)) *see also Tibbs,* 457 U.S. at 40–41, 102 S.Ct. 2211. Such a finding has the force of an acquittal.[4]

However, the result is different when the judge grants a new trial because he personally weighs the evidence, disagrees with the jury's resolution, and concludes that the verdict is against the weight of the evidence. *Tibbs,* 457 U.S. at 42, 102 S.Ct. 2211. In that case, the judge acts as the "13th juror," and the circumstances do not signify an acquittal. *Id.* (analogizing this situation to a hung jury, which does not bar retrial under the Double Jeopardy Clause). A reversal based on the weight of the evidence, then, "simply affords the defendant a second opportunity to seek a favorable judgment." *Id.* at 43, 102 S.Ct. 2211. In this case, respondent argues, the trial judge never specifically stated that he was ordering a new trial because the evidence was insufficient to sustain the conviction. Indeed, he would not have ordered a new trial before a different judge if the evidence was insufficient. Moreover, the Illinois Appellate Court specifically found that the evidence was sufficient to sustain the

conviction. *See infra* note 4. Thus, reasons respondent, "the trial judge in this case set aside petitioner's conviction and granted a new trial because of the weight, rather than sufficiency, of the evidence," and consequently, retrial was not barred by the Double Jeopardy Clause. *See* Answer to Petition for Writ of Habeas Corpus, at 21.

Petitioner argues that the distinction urged in *Tibbs* is meaningless in this situation because the judge was the self-same trier of fact. For example, the *Tibbs* rationale has only been applied to situations where the trier of fact was a different entity from the person or court setting aside the conviction. *See e.g., Tibbs,* 457 U.S. at 38–39, 102 S.Ct. 2211 (new trial permissible where jury rendered initial verdict and Florida Supreme Court reversed because certain findings of fact were questionable); *State v. Dasher,* 278 S.C. 395, 297 S.E.2d 414, 416–17 (1982) (conviction stands where jury rendered a verdict of guilty but trial judge set aside the conviction, apparently because of his assessment of a witness's credibility). In a case such as this, where the trial judge was himself the trier of fact, it was impossible for him to act as the "13th juror." When he vacated the conviction because of his doubts about the evidence, petitioner argues, he was necessarily finding reasonable doubt of petitioner's guilt. To say that he granted a new trial because he personally weighed the evidence and was unconvinced is, therefore, the same as saying he acquitted the defendant. The fact that the judge actually ordered a new trial rather than a formal acquittal does not defeat this conclusion. *See Hudson,* 450 U.S. at 43–44, 101 S.Ct. 970 (determining that the grant of a new trial following a conviction was actually an acquittal); *see also Smalis v. Pennsylvania,* 476 U.S. 140, 144, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (holding that grant of demurrer was actually an acquittal); *United States v. Sisson,* 399 U.S. 267, 290, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970)

4. Some cases have held that this type of an acquittal may be appealed, reversed and the original conviction reinstated. *See United States v. Greer,* 850 F.2d 1447, 1449 (11th Cir.1988) (stating that a post-verdict acquittal based on insufficient evidence may be appealed without violating the Double Jeopardy Clause because reversal would not result in further fact-finding proceedings); *United States v. Singleton,* 702 F.2d 1159, 1161–62 (D.C.Cir.1983) (same); *United States v. Steed,* 674 F.2d 284, 286 (4th Cir.1982) (vacating a panel decision that had accorded absolute deference to the trial judge's finding that the evidence was insufficient).

(determining that "arrest of judgment" following a conviction was actually an acquittal). This is true because the court's duty is to analyze the substance of the ruling, not the label attached to it. *See, e.g., Sisson,* 399 U.S. at 290, 90 S.Ct. 2117 (stating that "the trial judge's characterization of his own action cannot control the classification of the action"). Moreover, a defendant does not waive his right to a judgment of acquittal by moving solely for a new trial. *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Petitioner concludes that because the trial judge expressly predicated his ruling on his doubt of petitioner's guilt, his ruling was an acquittal. *See Hudson,* 450 U.S. at 43, 101 S.Ct. 970.

Respondent does not address this argument, and points to no cases in which the person vacating the conviction is the very person who made the finding of guilty.[5] The Illinois Appellate Court did not discuss this aspect of the case.

The trial judge in this case had a legal obligation to deny the new trial motion (which was based on the sufficiency of the evidence) and sustain the conviction if he was convinced beyond a reasonable doubt of petitioner's guilt. *See e.g., United States v. Pierre,* 974 F.2d 1355, 1357 (D.C.Cir.1992) (holding that jury was properly instructed that it has a duty to convict if convinced beyond a reasonable doubt of defendant's guilt, and stating that such instruction was legally accurate). We presume that he knew the law and applied it in making his ruling. *See Walton v. Arizona,* 497 U.S. 639, 653, 110

S.Ct. 3047, 111 L.Ed.2d 511 (1990). The irresistible inference, therefore, is that by reconsidering the finding of guilt, vacating the conviction and ordering a new trial, the trial judge acquitted petitioner.

This conclusion is consistent with the Supreme Court's definition of an acquittal—a precedent the Illinois Appellate Court disregarded entirely. *See Smalis,* 476 U.S. at 144 & n. 6, 106 S.Ct. 1745; *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 309, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *Swisher v. Brady,* 438 U.S. 204, 226, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978) (dissent); *United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Sanabria v. United States,* 437 U.S. 54, 71, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Burks,* 437 U.S. at 10, 98 S.Ct. 2141; *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *see also Sisson,* 399 U.S. at 290, 90 S.Ct. 2117. An acquittal occurs when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all the factual elements of the offense charged." *Scott,* 437 U.S. at 97, 98 S.Ct. 2187 (quoting *Martin Linen,* 430 U.S. at 571, 97 S.Ct. 1349). This definition focuses on a resolution of factual issues, not on grounds unrelated to guilt or innocence. *Id.* 437 U.S. at 98 & n. 11, 98 S.Ct. 2187 (commenting that a prejudicial pretrial delay does not relate to guilt or innocence, but hypothesizing that the insanity defense does).[6] Here on the motion for a new trial, the issue before the trial judge (and fact-finder) was

---

5. We are aware of two cases in which a conviction following a bench trial was set aside by the trial judge. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *United States v. Kellerman,* 729 F.2d 281 (4th Cir.1984). Both cases are distinct from the one before us because the judge vacated the conviction after resolving *legal* issues unrelated to factual guilt or innocence. *See Ceccolini,* 435 U.S. at 270–71, 98 S.Ct. 1054 (court vacated conviction after it granted defendant's motion to suppress the key piece of evidence against him); *Kellerman,* 729 F.2d at 283 (district court set aside conviction because, as a matter of law, the check at issue was worthless and so defendant could not have misapplied funds). The government was entitled to appeal the orders setting aside the finding of guilt because in the event of a reversal, no new trial would be necessary in

that the reviewing court could simply reinstate the conviction.

6. *Scott* explained the rationale:

[A] defendant who has been released by a court for reasons required by the Constitution or laws, but which are unrelated to factual guilt or innocence, has not been determined to be innocent in any sense of that word, absolute or otherwise. In other circumstances, this Court has had no difficulty in distinguishing between those rulings which relate to 'the ultimate question of guilt or innocence' and those which serve other purposes. *Stone v. Powell,* 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

*Id.*

petitioner's guilt or innocence. In particular, the question was whether the eyewitness identification could establish petitioner's guilt beyond a reasonable doubt. In ruling on the motion, the trial judge resolved the issue in petitioner's favor.

Subjecting a person to post-acquittal fact finding proceedings going to guilt or innocence violates the Double Jeopardy Clause. *Smalis*, 476 U.S. at 145, 106 S.Ct. 1745. Because petitioner may not be retried, we grant the petition for writ of habeas corpus.

## CONCLUSION

The court concludes that the petitioner is in the custody of respondent[7] in violation of the Constitution of the United States. Accordingly, a writ of habeas corpus will issue, ordering respondent to release the petitioner unconditionally, forthwith and without retrial.

---

7. Since petitioner is free on bond, no one has actual custody of him. But, as the Seventh Circuit explained, "[t]he important thing is not the quest for a mythical custodian, but that the petitioner name as respondent someone (or some institution) who has both an interest in opposing the petition if it lacks merit, and the power to give the petitioner what he seeks if the petition has merit—namely, his unconditional freedom."

*Reimnitz*, 761 F.2d at 409. In the case of a person out on bail, the court identified two possible respondents: the Sheriff of Cook County and the circuit court of Cook County. *Id.* at 408–09 (reasoning that it was proper for petitioner to name the circuit court as respondent). Thus, it was proper for petitioner to name the Sheriff as respondent.