21806

The STATE, Appellant, v. Leon J. DASHER, Respondent.
(297 S. E. (2d) 414)

*Atty. Gen Daniel R. McLeod, Sr. Asst. Atty. Gen. Brian P. Gibbes, Asst. Atty. Gen. Lindy P. Funkhouser*, Columbia, and *Sol. Donald V. Myers*, Lexington, *for appellant.*

*L. Marion Gressette* and *F. Lee Prickett, Jr.*, St. Matthews, *for respondent.*

Nov. 4, 1982.

LEWIS, Chief Justice:

Respondent, along with others, was charged with conspiracy to violate the South Carolina Controlled Substance Act, a conspiracy punishable under Section 44-53-420, Code of Laws of South Carolina, 1976. He was found guilty, but upon post-trial motion for judgment in his favor notwithstanding the verdict, the trial judge, before sentencing, without the assignment of any grounds, supplanted the jury verdict of guilty and entered a verdict of his own of not guilty. The State has appealed, and because that ruling cannot be affirmed without abandoning our prior decisions on the roles of judge and jury, we reverse.

A review of the testimony brings into focus the error of the trial court. Our prior cases have clearly established the elements of criminal conspiracy. *State v. Hightower*, 221 S. C. 91, 95-96, 69 S. E. 363; *State v. Fleming*, 243 S. C. 265, 273-274, 133 S. E. (2d) 800; *State v. Greuling*, 257 S. C. 515, 523-524, 186 S. E. (2d) 706; *State v. Steadman*, 257 S. C. 528, 186 S. E. (2d) 712; *State v. Hayden*, 268 S. C. 214, 220, 232 S. E. (2d) 889; *State v. Oliver*, 275 S. C. 79, 267 S. E. (2d) 529; *State v. Sullivan*, 277 S. C. 35, 282 S. E. (2d) 838.

Respondent and his codefendants were indicted for conspiring to violate the drug laws by their participation in a scheme to obtain and distribute cocaine in Lexington County through one Robert Jackson Rece. Respondent's participation consisted mainly in providing financial assistance to the operation.

The only element clearly at issue in respondent's trial was his knowledge of the unlawful purpose being pursued by his codefendants. There was no dispute whatever that the respondent had made two loans in the amount of five hundred ($500.00) dollars each to Robert Jackson Rece in the monthy of August 1978. Both loans were promptly repaid within a few days at the equivalent of 20% interest, which is to say the respondent received six hundred ($600.00) dollars in repayment on each of his five hundred ($500.00) dollar loans.

Rece and others testified in detail that respondent's money was used to further drug smuggling operations. Respondent did not deny that his money was so applied. His position was that he only learned of the criminal conspiracy some time after the loan transactions. He so testified at trial, in direct opposition to the testimony of Rece and another witness, William N. Garrington, Jr. The question of respondent's knowledge was thus placed squarely before the jury as an issue of fact.

Witness Rece operated a liquor store in Cayce, South Carolina, during August 1978, and both loans were made at the store. In other words, respondent met Rece at Rece's convenience to lend him money. On August 4, 1978, the first loan was made in the presence of Garrington, who also contributed five hundred dollars and who on Rece's instructions sent the entire thousand dollars to a fourth party in furtherance of the conspiracy. Garrington's testimony at trial supported Rece's

claim that the respondent knew how his money was to be used.

The second loan was made later in August in a similar manner, except for the absence of any witness to the transaction besides Rece and respondent.

In the Fall of 1978, Rece was arrested. At about the same time, respondent became Chief of Police in Swansea, South Carolina. Rece agreed to assist the authorities in their investigation of the conspiracy, and as a result he placed two telephone calls to respondent which calls were taped under police supervision and placed into evidence at trial.

The tapes show Rece making numerous references back to the earlier loans and their application to the purchase of cocaine. While respondent's comments are noncommittal, they do evidence some awareness of the earlier cocaine deals. The following is a sample from one call:

> Rece: Now, think about this before you say yes or no. Okay. What you made on that last/expletive/is/expletive/. I got a chance to buy 200 pounds of Acapulco Gold for $6000.00. I'll handle it. I'll sell it. If I can get you to invest $2000.00, it will bring you $4000.00 back. I will give you title to two Mustangs to hold for me as collateral.
> Dasher: When you got to make the move?
>
> \*   \*   \*   \*   \*   \*
>
> Rece: . . . You know what you made before in that other/expletive/, you know, give me $500.00 and get $600.00 back, that's/expletive/. I'm talking about I can put some good money on you this time.
>
> \*   \*   \*   \*   \*   \*
>
> Dasher: It will take me a little time to raise it because I slapped everything on the credit union.
> Rece: . . . I mean are you interested in this thing?
> Dasher: I would have to get back with you.
> Rece: Well, you know — you know it's a hell of a lot better than that damn coke thing we, you know, we were fooling with I borrowed the money from you for. A hell of a lot better thing than that.
> Dasher: Where are you located at any more?
>
> \*   \*   \*   \*   \*   \*

Respondent contended at trial that he knew of the cocaine transactions by the time of these calls but that he was con-

ducting his own investigation and was seeking to exploit Rece for more information. In fact, respondent did contact the state Law Enforcement Division to reveal Rece's proposal. At no time, however, did respondent reveal to his SLED contacts the true nature of the loans he had made to Rece.

It is possible that a jury, if it believed the testimony of respondent, could have found the requisite knowledge to be lacking and could have rendered a verdict of acquittal. On the other hand, the same testimony could have equally led reasonable jurors to find respondent guilty. It is particularly odd that Rece (an experienced drug dealer) would have been so bold and open in his "pitch" to the respondent (by then, Swansea Chief of Police) unless the two men had previously engaged in similar dealings. Common sense suggests that a prudent dope peddler would be more cautious, tentative and vague than was Rece if in fact he were approaching a known police officer for the first time to propose a criminal conspiracy. This is not the only logical deduction from the evidence, but is a reasonable inference which a jury could have drawn in this case.

In any event, the jury in this case was confronted with a clear factual dispute. Moreover, since the critical issue was the respondent's knowledge of the conspiracy, the jurors were required to weigh his credibility against that of the State's two witnesses, Rece and Garrington.

At the conclusion of all the evidence, respondent renewed previous motions for a directed verdict of acquittal based upon insufficiency of the evidence. In denying the prior motion, the trial court correctly held that its duty was to view the evidence most favorably for the State. In passing, the court remarked about the State's chief witness: (emphasis added)

> . . . as I have to view the evidence in the light which forces me into *an unpleasant situation* of having to believe everything that Rece says, which I have to for the purpose of this motion, *which I may not necessarily agree with,* but I am bound under this motion to accept everything Rece says as true.

At the conclusion of the evidence, the court again stated (emphasis added):

It is not a question of whether or not the Court believe[s] a

witness or not. The Court is in no position to judge the credibility of witnesses *at this point,* but the Court has to accept what the witness says as being truthful, and then give the evidence that comes from that benefit of all the inferences that follow.

Here the trial court was correct except for its interpolation of the words "at this point" in stating the rule. Our cases have consistently held that at *no point* may the trial court weigh the credibility of witnesses. *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825; *State v. Marshall,* 250 S. C. 448, 158 S. E. (2d) 650, 651; *State v. Fleming,* 254 S. C. 415, 420, 175 S. E. (2d) 624; *State v. Pitts,* 256 S. C. 420, 427, 182 S. E. (2d) 738; *State v. Wharton,* 263 S. C. 437, 443, 211 S. E. (2d) 237; *State v. Ham,* 268 S. C. 340, 233 S. E. (2d) 698. See also the many cases listed in 7A West's South Carolina Digest Criminal Law, Key No. 753.

After the verdict, respondent moved and argued for a new trial. Where new trial is sought, this Court has stated: "A trial judge may not invade the province of the jury or substitute his verdict for theirs." *Watford v. S. C. State Highway Dept.,* 269 S. C. 130, 133, 236 S. E. (2d) 558. On an earlier occasion, the court spoke more simply: "The trial judge is not a juror." *State v. Williams,* 166 S. C. 63, 81, 164 S. E. 415. The principle is restated in numerous cases found in 7A West's South Carolina Digest Criminal Law, Key No. 935.

Notwithstanding settled law, the trial court abruptly announced at the conclusion of argument: "The verdict in this case is hereby vacated. The verdict of not guilty is directed by the court."

There is no precedent in this State for such action. This is not a case in which a trial judge has granted a *new trial* upon the facts (a power which he admittedly has), but rather one in which a trial judge has entered a verdict of *not guilty* in the face of conflicting evidence (a power he has never had in this jurisdiction). Worse still, the trial court's action appears based upon *personal disbelief* that the State's chief witness was truthful in his testimony. It is obvious that the trial court simply disagreed with a jury which had chosen to believe the "wrong" witnesses. To affirm this decision is to grant unprecedented license to trial judges to invade the area where the jury system has been deemed most effective—that is, in

assessing the truthfulness of fellow human beings testifying under oath.

There is a total and complete absence of anything in this record, or in judicial precedent in this State, to sustain the action of the trial judge. The record beyond question shows that there was competent evidence to sustain the verdict of guilty. Where there is evidence to sustain the verdict and the trial judge considered an injustice had been done, he would have had, at the most, only authority to grant a new trial. If he acquitted the respondent upon the ground that there was no evidence to sustain the conviction, then he committed an *error of law* because a finding that there was no evidence would be in the teeth of the record that patently showed otherwise. It is undisputed that the State may appeal where the verdict is set aside wholly upon an *error of law.*

The trial judge did not exercise a power to grant a new trial upon the facts, but rather set aside the verdict of the jury in the face of conflicting facts and substituted his judgment for that of the jury. In doing so, he committed an error of law, from which the State had a right to appeal.

Concern is expressed for double jeopardy implications should we sustain this appeal. This concern is baffling in light of the fact that reversal here will merely reinstate a jury verdict without further trial. As the United States Supreme Court observed in *U. S. v. Wilson,* 420 U. S. 353-354, 95 S. Ct. 1013, 1026, 43 L. Ed. (2d) 232, 247; "when a judge rules in favor of a defendant after a verdict of guilty has been entered by the trier of the facts, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause."

Even if a new trial were involved in this case, a retrial would not be barred under the Double Jeopardy Clause, since the ruling of the trial court was obviously based upon the conclusion that the conviction was against the weight of the evidence. *Tibbs v. Florida,* 454 U. S. 963, 102 S. Ct. 502, 72 L. Ed. (2d) 652.

Accordingly, we reverse the order under appeal, reinstate the verdict of the jury and remand for sentencing.

GREGORY and HARWELL, JJ., concur.

NESS, J., and WILLIAM L. RHODES, JR., Acting Associate Justice, dissent.

Ness, Justice (dissenting):

Disagreeing with the majority opinion, I respectfully dissent.

Respondent made timely motions for directed verdict, at the end of the State's case-in-chief and prior to submitting the case to the jury. Respondent further moved after the jury returned its verdict for judgment N. O. V. or in the alternative a new trial. The trial judge vacated the jury's verdict and granted the motion for judgment N. O. V.[1]

The State appeals alleging the trial court abused its discretion in granting respondent a judgment N. O. V. This appeal raises the issues of this Court's jurisdiction and scope of review. I would hold the State cannot appeal a *fact based post verdict judgment.*

The respondent moves to dismiss the appeal arguing that the State has no right to appeal from a judgment of acquittal, and second, that the appeal would violate the double jeopardy clauses of the U. S. Constitution (Fifth Amendment) and the Constitution of South Carolina, Article I, § 12.

First, I address respondent's contention that the State has no right of appeal from the judgment reversing his conviction.

"That the State has no right of appeal from judgment upon verdict of acquittal in a criminal case seems to have been recognized and accepted as the law of this jurisdiction from the beginning of our judicial history." *State v. Lynn, et al.,* 120 S. C. 258, 260, 113 S. E. 74 (1922) as cited in *State v. Holiday,* 255 S. C. 142, 177 S. E. (2d) 541 (1970). Also see *Rex Wilkes,* 4 Burr. 2527, 2550 (K. B. 1770).

While a limited right of appeal in criminal cases has been conferred in federal criminal cases by 18 U. S. C. A. 3731 and by statute in some states, *we have no such statutes and the extent of the right of the prosecution to appeal in South Carolina has been defined by our judicial decisions. State v. Holliday, supra,* 255 S. C. 142 at 144, 177 S. E. (2d) 541.

In the federal courts "[t]he exceptional right of appeal given to the Government by the Criminal Appeals Act is strictly

---

[1] This motion under Circuit Court Rule 79 related back to the motion for a directed verdict. *Grooms v. Zander,* 246 S. C. 512, 144 S. E. (2d) 909 (1965); *Gallmon v. American Employers Insurance Company,* 272 S. C. 369, 252 S. E. (2d) 124 (1979).

limited to the instances specified." *U. S. v. Borden Company, et al.*, 308 U. S. 192, 60 S. Ct. 182, 185, 84 L. Ed. 181 (1939). These limited rights, *none* of which apply to a judgment of acquittal, are all specified in 18 U. S. C. A. § 3731 as amended on January 2, 1971. In *United States v. Sisson*, 399 U. S. 267, 90 S. Ct. 2117, 2129, 26 L. Ed. (2d) 608 (1970) it was stated:

> "Quite apart from the statute, it is of course, well settled that an acquittal cannot be reviewed, on error or otherwise, without putting [the defendant] twice in jeopardy - - - -."

In *United States v. Sanges*, 144 U. S. 310, 318, 12 S. Ct. 609, 612, 36 L. Ed. 445 (1892) it was held the government could not "appeal in a criminal case without express statutory authority in order to overcome the common-law rule that the state could not sue out a writ of error in a criminal case unless the legislature had expressly granted it that right. - - - The prior version of the Criminal Appeals Act was construed in accordance with the common-law." See Vol. 8A Moore's Federal Practice, Rules of Criminal Procedure, See 29-52.4, R. 29, Note 55.

The State argues vigorously the federal court's decisions decided pursuant to 18 U. S. C. A. § 3731 allow the prosecution to appeal from post verdict dismissal of an indictment[2] or from post verdict rulings in favor of the defendant.[3] I agree that in the federal courts this may be proper but not in the state courts *absent an enabling statute.*

The same prohibition against successive trials for the same offense barred the government's appeal from a preverdict dismissal in *Sanabria v. U. S.*, 437 U. S. 54, 98 S. Ct. 2170, 57 L. Ed. (2d) 43 (1978), and from appeal for a new trial after a post verdict dismissal in *Burks v. U. S.*, 437 U. S. 1, 98 S. Ct. 2141, 57 L. Ed. (2d) 1 (1978).

Thus as our general assembly has enacted no express statutory authority, the State's right to appeal under any circumstances in a criminal prosecution is determined by judicial decisions.

---

[2] *U. S. v. Wilson*, 420 U. S. 332, 95 S. Ct. 1013, 43 L. Ed. (2d) 232 (1975).

[3] *U. S. v. DiFrancesco*, 449 U. S. 117, 101 S. Ct. 426, 66 L. Ed. (2d) 328 (1980).

In *State v. Lynn, supra*, this Court refused the State's appeal from an order granting the defendant a *new trial.* Subsequently, in *State v. DesChamps*, 126 S. C. 416, 120 S. E. 491 (1923) the Court permitted the State's appeal where the granting of a new trial in a criminal case was predicted wholly upon *a error of law.* Again in *State v. Holliday, supra*, the State was allowed an appeal from a judgment reversing a defendant's conviction in magistrate's court on *purely legal grounds.*

> "The order under appeal was not concerned with the weight or sufficiency of the evidence, but was based upon the wholly legal ground that unlawful arrest, within itself, vitiated the conviction. Since the conviction was reversed *on a purely legal ground,* the State had the right to appeal from such judgment." (Emphasis added). *State v. Holliday, supra*, 255 S. C. 142 at 145, 177 S. E. (2d) 541.

No allegations of legal error are present in this case. The handwritten January 9, 1981, order states in its entirety:

> "The verdict of the jury, of guilty, as to Leon Dasher is hereby vacated and a verdict of not guilty is directed and ordered by the court."

Although no reasons were stated for the reversal of the jury's guilty verdict, respondent's motion for judgment N. O. V. was made on the ground of insufficiency of the evidence, thus *it is apparent the trial judge granted the motion because he believed there was no substantial evidence to warrant a conviction.* It is plain the trial judge evaluated the State's evidence and determined that it was legally insufficient to sustain a conviction. It was held in *U. S. v. Sisson*, 399 U. S. 267, at 297, 90 S. Ct. 2117, at 2133, 26 L. Ed. (2d) 608, "no appeal (could) be taken by the Government from an acquittal no matter how erroneous the legal theory underlying the decision." Also see *U. S. v. Steed*, 646 F. (2d) 136 (4th Cir. 1981).

In *U. S. v. Steed, supra*, rehearing *en banc*, 674 F. (2d) 284 (1982), the Fourth Circuit addressed the same issues raised here. The court based their jurisdiction to hear the appeal on the Criminal Appeals Act of 1970, stating "Congress granted the government an appeal of right no less expansive than that accorded to defendants." 674 F. (2d) 284 at 286. The key words

here are *"Congress* granted." "The United States has no right of appeal in a criminal case, absent explicit statutory authority." *U. S. v. DiFrancesco,* 449 U. S. 117, 101 S. Ct. 426, 434, 66 L. Ed. (2d) 328 (1980), South Carolina *has no criminal appeals act,* thus the Fourth Circuit's determination in *U. S. Steed, supra,* is not applicable in this State's criminal appeal.

There is no standard of review or right to appeal in criminal cases contained in South Carolina's Court Rules of Practice and Procedure. *Article I, § 12 of the South Carolina Constitution prohibits the State from seeking any review of a verdict or judgment of acquittal in a criminal case.* We have long recognized as have the Federal and United States Supreme Courts, that the State cannot appeal in a criminal case without express statutory authorization. *State v. Rogers,* 198 S. C. 273, 17 S. E. (2d) 563 (1941); *State v. Holliday, supra; United States v. Wilson,* 420 U. S. 332, 95 S. Ct. 1013, 1018, 43 L. Ed. (2d) 232 (1975); *U. S. v. Sanges, supra.* Our prior judicial decisions limit the State's right to appeal to cases where purely legal errors exist. The United States Supreme Court in *U. S. v. Martin Linen Supply Company, et al.,* 430 U. S. 564, 97 S. Ct. 1349 at 1353, 51 L. Ed. (2d) 642 (1977) held:

> "Consideration of the reach of the constitutional limitations inhibiting governmental appeals was largely unnecessary during the prior regime of statutory restrictions. - - - However, now that Congress has removed the statutory limitations to appeal and the relevant inquiry turns on the reach of the Double Jeopardy Clause. . ."

Moreover, "the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence." *U. S. v. DiFrancesco, supra,* 101 S. Ct. 434. In *Burks v. U. S. supra,* the defendant Burks was convicted of armed robbery, and the court of appeals vacated the judgment and remanded the case for determination of whether to direct a verdict of acquittal or order a new trial. Certiorari was granted and the U. S. Supreme Court per Mr. Chief Justice Burger held, that the court of appeals, by vacating the jury's guilty verdict, in essence held that the trial court had erred by not granting defendant's motion for judgment of acquittal. The court *explicitly stated,* "if the (trial) Court had so held in the first instance, as the reviewing court said it should have

done, a judgment of acquittal would have been entered and, *of course, petitioner could not be retried for the same offense. - - -*"(Emphasis added). *Burks v. U. S., supra,* 437 U. S. 1 at 12, 98 S. Ct. 2141 at 2147, 57 L. Ed. (2d) 1. *Former jeopardy includes one who has been acquitted by a verdict duly rendered. If the jury acquitted, there plainly would be double jeopardy to give the State another go at this citizen. We see no difference when the court orders a judgment of acquittal for lack of evidence. Sapir v. U. S.,* 348 U. S. 373 at 374, 75 S. Ct. 422 at 423, 99 L. Ed. 426 (1955).

In *United States v. Jenkins,* 490 F. (2d) 868 (2nd Cir. 1973) the Second Circuit in tracing the right of the prosecution to appeal stated at page 873, footnote 10:

> "The case law in the thirteen original states at the time the Bill of Rights was drafted gives some further insight into the dimensions of the common law protection the drafters thought they were building into the Fifth Amendment. The few reported cases touching on the problem of appeals in criminal cases generally stated or appeared to assume that the prosecution *could not appeal from an acquittal, - - -"*. (Emphasis added).

Also see *State of Wisconsin v. Detco, Inc.,* 66 Wis. (2d) 95, 223 N. W. (2d) 859 (1974); *State of Kansas v. Gustin,* 212 Kan. 475, 510 P. (2d) 1290 (1973); *State v. Meen,* 171 Wis. 36, 176 N. W. 70 (1920).

In the *Meen* case, supra, the court held, "a discharge of an accused by the court, *either before or after verdict,* for want of sufficiency of evidence, in legal effect the same as an acquittal, is not reviewable by writ of error on the application of the state." (Emphasis added). 176 N. W. at page 70.

The circumstances in the *Meen* case are similar to those in the instant case. There the defendant *was found guilty by a jury* after which the trial judge entered an order arresting judgments *for want of evidence* to sustain the verdict. The court in *Meen, supra,* at page 71 stated:

> "The defendant's motion after verdict among other things demanded the discharge of the defendant on the ground that the evidence of the case is insufficient to warrant the conviction of defendant of the offenses

charged in the information. The record is also clear that the defendant insisted on his discharge by asking the court to direct a verdict of acquittal at the conclusion of all the testimony in the case. It is manifest that the defendant insisted that no case had been made against him and that the court direct that he be discharged from further prosecution in the case. This is the effect of the proceedings in the trial court. In the light of this state of the case, is the state entitled to prosecute a writ of error to review the case in this court? Writs of error do not lie at the suit of the state except pursuant to constitutional statutory provisions."

Also see *State v. Powell,* 86 N. C. 640 (1882); *State v. Solomons,* 6 Yerger's R. 360 (Tenn. 1834); Blackstone's Commentaries on the Laws of England, Vol. IV, page 386 (1847), by Thomas M. Cooley in Vol. II, Bood IV, Ch. 26, page 148 (1889) and by Christian Chitty, Lee, Hovenden and Ryland in Vol. II, Book IV, page 271 (1872) *all contain* the statement that under the common law the pleas of acquittal are a bar to appeal.

Moreover, other textbooks are in accord that no appeal lies at the instance of the State in a criminal case. *U. S. v. Sanges, supra;* Bishop's Criminal Law, page 658.

Exercising the traditional power of appellate courts to determine the proper standards of review where they are not legislatively imposed, I would apply here a standard of absolute deference to purely *fact-based post verdict judgments* of acquittal in order to protect the traditional, historical right of criminal defendants to have the trial court's factual determination accorded absolute finality. The granting of the motion for judgment N. O. V. by the trial judge on the *lack of evidence was final,* and cannot be reviewed without express statutory authority. On this basis I would dismiss this appeal and affirm the fact-based judgment of acquittal entered by the trial judge.

I would affirm.

WILLIAM L. RHODES, JR., Acting Associate Justice, concurs.