610 S.E.2d 305

**The STATE, Appellant,**

v.

**Rorey Jamar JOHNSON, Respondent.**

**No. 3939.**

Court of Appeals of South Carolina.

Heard Dec. 14, 2004.
Decided Jan. 31, 2005.
Rehearing Denied March 17, 2005.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for appellant.

Acting Chief Attorney Joseph L. Savitz, III, of Columbia, for respondent.

HEARN, C.J.

After a jury convicted him of murder, Rorey Jamar Johnson was granted a new trial based on an improper reference by a State's witness to a polygraph exam. The State appeals. We affirm.

## FACTS

Rorey Jamar Johnson was charged with the murder of Gregory Whitaker who was fatally shot in the upper left shoulder while sitting in a car. At trial, the State presented three witnesses who testified to having been at the scene of the shooting. The first witness to testify was Crystal Marion. She testified she was a prostitute and friend of the victim. The night of the incident she got into a car with Alton "Black" Henderson, Johnson, and a young driver she did not know. The three of them drove to see the victim to sell him some drugs. The victim was sitting alone in a car and very intoxicated. After they spoke to the victim, he got out of the car on the driver's side. The victim and Johnson discussed getting some "weed," but then the victim admitted he did not have any money and got back into his car. Marion testified she saw Johnson get into a "brown car" before she left the area.

Thereafter, when Marion returned later, she stood next to the brown car talking to Henderson and Michael Jones and heard a gunshot. Johnson then ran up to her from behind the victim's car with a pistol in his hand. She testified that she and Johnson jumped into the brown car with Henderson and Jones and left. They subsequently let her out of the car, and she stopped two police officers who took her to police headquarters to make a statement.

Marion testified she gave a statement to the police but it was not the truth. She said she lied in the first statement because she was afraid for her disabled parents. She stated she knew the victim but not Johnson. She testified that she later gave the police two more statements. While being questioned about her statements the following colloquy occurred:

The State: And you, in fact, later on gave another written statement to the police; is that right?

Marion: Which was based on the truth. That's right.

The State: In fact, ultimately, you gave the police three statements about the incident; is that correct?

Marion: Uh-huh.

The State: Okay. And it was during this final interview, final statement when you told the complete truth on this matter; is that correct?

Marion: Well, the second statement was the truth as well, but, therefore, they kind of made me feel like I was lying because I didn't pass the polygraph test. And the second one—

At this point, Johnson's counsel objected.

Counsel requested a mistrial due to Marion's statement that she did not pass the polygraph. He argued that the mere mention would imply to the jury that her testimony was truthful because of the implication that she had since passed a polygraph. Additionally, counsel argued that the fact she had been polygraphed could lead the jury to believe not only that her testimony she was truthful, but that the other witnesses may also have passed a polygraph before testifying. The State requested a curative charge and stated that there would be no further mention or argument relating to the results of the polygraph. The trial judge denied the motion for a mistrial and gave the following curative instruction:

THE COURT: Ladies and Gentlemen of the jury, our United States Supreme Court and State Supreme Court have both ruled that polygraph tests are not admissible in court because they are not accepted scientifically as being accurate. So I would instruct you to disregard any—they are not reliable. So I would instruct you to disregard any reference that anybody has made in regard to any polygraph examinations or anything of that nature. And completely dismiss that from your mind and not let that influence you in anyway [sic]. Our United States Supreme Court has ruled in the last year or two on a new case that they were not reliable.

There was no further mention of a polygraph test.

The State presented two additional witnesses that were present at the shooting. Alton "Black" Henderson testified he

saw Johnson go up to the car carrying the victim and fire a shot into the car. When Henderson was brought to the police station he made two statements. On cross-examination, he stated he told the truth in both statements but went into more detail in the second statement. He testified that when he first spoke to police he claimed he had not seen the shooting. Additionally, he admitted he did not tell the police he left with Johnson and Jones that night. On the stand, Henderson testified he saw Johnson use a large revolver to shoot the victim.

Michael Jones testified he was sitting in the brown car when he heard the gunshot. He saw Johnson coming to the car with a brown handle that looked like a gun. Johnson and Marion got in the car and left. Jones dropped Marion and Henderson off and went back to his house with Johnson. Jones testified he saw Johnson the next day and Johnson told him he had shot a man. After Jones met with the police he told them to go to his house and the gun would be there. The police did not find the gun. On cross-examination, Johnson testified he deliberately lied to the police about having the gun because he knew Johnson was coming to the house and because he wanted the police to go to his house and "catch [Johnson]." Marion, Henderson, and Jones were all initially charged with murder in connection with the shooting. At the time of the trial, Henderson and Jones had pled to lesser charges.

Detective Mark White testified about the investigation. He stated they never found a gun. When asked what the benefit of finding the gun would be, he answered, "[w]e would have been able to compare the bullet to the weapon." White was asked on cross-examination whether the projectiles or bullets could be sent to the South Carolina Law Enforcement Division (SLED) and examined by firearms experts to determine caliber. White testified the projectile found in the console of the car was sent to SLED for analysis, but he did not recall what the caliber was.

At the close of the State's case, counsel for Johnson renewed the motion for a mistrial "based on the testimony of Ms. Marion, specifically, when she made the reference to her having failed the polygraph." The trial court denied the

motion. After Johnson rested, counsel again renewed his motion for a mistrial "on the basis of Ms. Marion's comments about failing the polygraph...." The trial court again denied the motion.

In the course of deliberations, the jury sent out a question indicating it might be considering accomplice liability. In discussing the question with counsel, the trial court stated, "The facts of this case are he either shot him or he didn't. There is no accomplice liability in this case.... Because the facts do not support accomplice liability because they've already charged the other two with accessory. So it can't be accomplice liability." The jury returned to the courtroom for an additional instruction.

The jury found Johnson guilty of murder. Johnson's counsel moved for a new trial on grounds of the denial of his motions for directed verdict and, specifically, the denial of the motion for a mistrial following Marion's reference to the polygraph test. The trial court took the motion under advisement overnight. After listening to arguments by counsel, the trial court granted the motion for a new trial. This appeal followed.

## LAW/ANALYSIS

The State argues the trial court abused its discretion in granting a motion for a new trial after a conviction for murder. We disagree.

In the criminal court, the only post verdict fact-based remedy available is a motion for a new trial. *State v. Taylor*, 348 S.C. 152, 158, 558 S.E.2d 917, 919 (Ct.App.2001) (citing *State v. Miller*, 287 S.C. 280, 285, 337 S.E.2d 883, 886 (1985) (Ness, J., concurring in part and dissenting in part citation omitted)). The State may appeal the grant of a new trial when it appears it is based "wholly upon an *error of law*." *State v. Dasher*, 278 S.C. 395, 400, 297 S.E.2d 414, 417 (1982) (emphasis in original) (finding that "[t]he trial judge did not exercise a power to grant a new trial upon the facts, but rather set aside the verdict of the jury in the face of conflicting facts and substituted his judgment for that of the jury. In doing so, he committed an error of law, from which the State had a right to appeal"). "The granting or refusal of a motion

for a new trial is within the discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *State v. Simmons*, 279 S.C. 165, 166, 303 S.E.2d 857, 858 (1983) (citation omitted).

In this case, the primary evidence of Johnson's guilt was the testimony of three witnesses to the incident, and their credibility was critical to the jury's decision. Moreover, each witness gave some form of inconsistent statement to the police. The trial judge denied Johnson's initial motion for a mistrial on grounds of polygraph testimony but issued a thorough curative instruction. Thereafter, following testimony of the other witnesses, who also gave inconsistent statements, Johnson renewed his motion for a mistrial on grounds of the polygraph testimony, which was denied. However, following the guilty verdict, the trial judge granted Johnson's motion for a mistrial on grounds of the polygraph testimony, stating:

> And it was brought up that she'd given three statements, I believe it was. And the jury knew that she passed the polygraph test. I mean they didn't know whether she'd passed the test or not, but she said she didn't pass the polygraph test. Well, that was the first witness. And I didn't know what effect that was going to have on the trial anyway because I didn't know what the other witnesses—or what the evidence was. But it appears that this whole case boils down to the statements of these witnesses.
>
> . . . .
>
> And then as it turned out, unbeknownst to the court, the Defendant did not take the witness stand. And that's his constitutional right. And of course, no comments can be made about him not taking the witness stand. But that was the problem about these polygraphs, and the inconsistent statements, and the fact that the other defendants were allowed to plea in order to testify against this Defendant to convict him.
>
> . . . .
>
> But I think the polygraph just was magnified because the jury could have inferred, and I believe there's a strong likelihood that that was the case based on the intelligence and the questions of the jury, that all these witnesses had

taken polygraph tests, that the State had decided to let the other people plead to what they did and put their testimony in as truth. The solicitor argued strongly that they were telling the truth. And that—the conclusion was after they stayed out and deliberated for some time that [Johnson] was the trigger-man. And I believe it all resulted from the polygraph tests and from all the evidence as a whole.

"Evidence regarding the results of a polygraph test or the defendant's willingness or refusal to submit to one is inadmissible." *See, e.g. State v. Johnson,* 334 S.C. 78, 90, 512 S.E.2d 795, 801 (1999) (citations omitted). "Mention of a polygraph test might arise in any one of many ways. The safer course would normally be to avoid any mention of a polygraph examination. If such is brought out in the testimony, the trial judge should be meticulous to see that no improper inference is created." *State v. McGuire,* 272 S.C. 547, 551, 253 S.E.2d 103, 105 (1979) (citation omitted). However, the mere mention of a polygraph test does not always automatically result in error. A curative instruction can cure any possible prejudice caused by the polygraph testimony. *See Johnson,* 334 S.C. at 90, 512 S.E.2d at 801.

A curative instruction given following a witness's reference to a polygraph test is not adequate where the reference is likely to impress a jury to the extent that the curative instruction does not overcome the prejudicial effect. *See United States v. Tedder,* 801 F.2d 1437, 1444 (4th Cir. 1986). In ruling on a motion for a new trial based on the prejudicial effect of incompetent testimony, even following a curative instruction, the trial judge must consider other testimony in the case. *See State v. Singleton,* 167 S.C. 543, 548, 166 S.E. 725, 727 (1932) (finding the trial judge did not err in refusing to grant a new trial on grounds of hearsay testimony, when other testimony warranted a conviction). The Fourth Circuit has set forth two factors to consider in reviewing whether a curative instruction or a mistrial is an appropriate response to a reference to a polygraph: "(1) whether an inference about the result of the test may be critical in assessing the witness's credibility, and (2) whether the witness's credibility is vital to the case." *United States v. Brevard,* 739 F.2d 180, 182 (4th Cir.1984) (citation omitted).

We find these factors helpful in reviewing the trial judge's grant of a new trial in this case.

In granting the new trial, the trial judge determined that the prejudicial effect of the polygraph testimony was not overcome by his initial curative instruction. He stated that because Marion was the first witness and mentioned her polygraph results, the jury could infer that the other witnesses also took polygraph tests and the results of those tests affected their testimony. We agree, and pursuant to the factors set forth in *Brevard*, we find the polygraph testimony was critical in assessing Marion's credibility, which affected the credibility of the other witnesses who also gave inconsistent statements. Further, we find Marion's credibility and the credibility of the other witnesses were vital elements in the State's case.

Accordingly, the trial judge did not abuse his discretion in granting Johnson a new trial, and the decision of the trial court is hereby

**AFFIRMED.**

GOOLSBY and WILLIAMS, JJ., concur.