646 S.E.2d 150

**The STATE, Appellant,**

v.

**Jeremiah DICAPUA, Respondent.**

No. 4239.

Court of Appeals of South Carolina.

Heard March 6, 2007.
Decided April 23, 2007.
Rehearing Denied June 28, 2007.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Appellant.

Appellate Defender Eleanor Duffy Cleary, of Columbia, for Respondent.

GOOLSBY, J.

The State appeals the trial court's *sua sponte* grant of a new trial to the respondent Jeremiah Dicapua following his convictions for distribution of crack cocaine and possession with intent to distribute crack cocaine. We reverse and reinstate Dicapua's sentence.

### FACTS

On October 16, 2003, the Horry County Police Department and Myrtle Beach Police Department organized a sting operation in Myrtle Beach. They rented connecting rooms at a Red Roof Inn in Myrtle Beach. One room was to be used as a transaction room and the other as a control room where the officers, using surveillance equipment consisting of a hidden camera and a microphone, would monitor what occurred in the transaction room.

The police issued a female informant $180 in "marked police buy money" with which to buy drugs from Dicapua, a person from whom the informant claimed to have purchased drugs on a prior occasion. The police had arrested the informant and another woman whom the record describes as a "cooperating witness" earlier that day, charging them with prostitution. Before Dicapua ever entered the transaction room, the police conducted a search of the room and of the informant and the

other woman. Once the officers had everything in place for the sting operation, the informant left the room.

Detective Kent Donald of the Narcotics and Vice Division of the Horry County Police Department saw Dicapua and the informant enter the transaction room as he watched from the control room next door using the hidden camera. Once inside the transaction room, the informant gave Dicapua money and Dicapua tossed "something" onto the bed. Either the informant picked up whatever Dicapua dropped onto the bed or Dicapua handed the "something" to her. Regardless, the informant placed what Dicapua dropped or handed to her inside her pocket. The officers entered the room and arrested Dicapua as he prepared to leave.

The police immediately searched Dicapua and found 0.8 grams of crack cocaine and $160 in marked bills on his person. The informant turned over two bags of crack cocaine. All total, the police recovered 2.4 grams of crack cocaine.

Before the start of trial, Dicapua sought to suppress the videotape because it did not have any audio. The audio surveillance system had failed to record what was said in the transaction room because of a machine malfunction. The trial court, however, refused to suppress the videotape.

Once the trial began, the State introduced the videotape through its first witness, Detective Donald. When the trial court asked what the defense's position was regarding the introduction of the videotape, Dicapua's counsel specifically stated, "We have *no objection*, Your Honor." (Emphasis added.) Whereupon, the trial court entered the videotape into evidence "[w]ithout objection."

After the jury found Dicapua guilty on both charges, he "renew[ed] all of [his] prior Motions ... made during the course of the trial, as well, as at the end of the State's case." Dicapua also moved for a new trial "on the basis of what else was set out before the Court, the objections and request going back to the CI, the chain, and all those things." The trial court denied Dicapua's motions, ruling that the jury's verdict was supported by the evidence. The trial court sentenced Dicapua to two concurrent sentences of thirty months in prison and fined him $25,000 on each offense.

The trial court vacated Dicapua's convictions and sentences the next day, acting *sua sponte.* The trial court focused upon the videotape, finding its introduction "inappropriate for multiple reasons." [1]

## LAW/ANALYSIS

■ The State argues the trial court abused its discretion when it granted Dicapua a new trial. We agree.

■ It is well settled that the grant or refusal of a new trial is within the discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of that discretion.[2] Where there is no evidence to support a conviction, an order granting a new trial should be upheld.[3] "The State may appeal the grant of a new trial when it appears it is based 'wholly upon an *error of law.*' "[4]

As the record reflects, Dicapua's sole objection to the videotape came in the form of a motion *in limine* to suppress the videotape because of its lack of audio. Once the State moved to enter the videotape into evidence and publish it to the jury, however, Dicapua's counsel specifically stated he had "no objection." We find this amounted to a waiver of any issue Dicapua had with the videotape.

In *Martelly v. State,* a case similar to the one here, the defendant's counsel not only failed to object to the introduction of evidence that he had previously moved to suppress through a pretrial motion, but affirmatively stated that he had no objection to its introduction.[5] The Court of Appeals of Maryland, in finding the defendant waived his objection, held:

---

1. The trial court also suppressed the introduction of the videotape in any subsequent trial of Dicapua on the charges, an issue we need not address in view of our decision to reverse the grant of the new trial.

2. *State v. Prince,* 316 S.C. 57, 63, 447 S.E.2d 177, 181 (1993).

3. *State v. Smith,* 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993).

4. *State v. Johnson,* 363 S.C. 184, 189, 610 S.E.2d 305, 307 (Ct.App. 2005) (emphasis in original) (quoting *State v. Dasher,* 278 S.C. 395, 400, 297 S.E.2d 414, 417 (1982)).

5. *Martelly v. State,* 230 Md. 341, 187 A.2d 105, 107 (1963).

[A]ppellant's express waiver of objection to the admission of the evidence now in question was tantamount to a withdrawal of his previous motion to suppress, and . . . consequently the issue of admissibility is not now before us. To hold otherwise would be to say that a defendant could not change his mind and affirmatively consent to the admission of the evidence at trial. It is settled law that when an accused is present in court and represented by competent counsel, he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial.[6]

**REVERSED.**

CURETON, A.J., concurs.

STILWELL, J., concurring in result only in a separate opinion.

STILWELL, J., (concurring in result):

I concur with the majority in its decision to reverse the grant of a new trial, but write separately to explain why I would reverse on a different ground.

---

**6.** *Id.* at 108. *See Southern Ry. Co. v. Coltex, Inc.*, 285 S.C. 213, 215–16, 329 S.E.2d 736, 737–38 (1985) (reversing a trial court's grant of a new trial *ex mero motu* on the ground that the party's waiver of the issue upon which the trial court granted a new trial meant the issue "was not properly before the trial court, the Court of Appeals, or this Court" and holding that the grant of a new trial on a waived issue constitutes an error of law requiring reversal); *see also State v. Patino*, 12 S.W.3d 733, 740 (Mo.Ct.App.1999) (ruling that the defendant, by announcing he had no objection to the introduction of evidence he previously attempted to suppress in a pretrial motion, affirmatively waived his objection); *State v. Scott*, 858 S.W.2d 282, 285 (Mo.Ct.App.1993) (holding that counsel, by affirmatively stating he had no objection to the admission of evidence, as compared to merely failing to object, waived his prior objection); *Dean v. State*, 749 S.W.2d 80, 83 (Tex.Crim.App.1988) (ruling an issue was not preserved for appellate review where defense counsel, after losing at the suppression hearing, expressly stated that defense had no objection to the admission of fingerprint evidence when the evidence was later offered at trial); *cf. State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn.Crim.App.1994) ("When . . . a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial . . . the party waives the issue.")

Dicapua raises the issue of the ability of the State to appeal the grant of a new trial. This is a threshold issue not addressed in the majority opinion. The State's ability to appeal the grant of a new trial is closely circumscribed by precedent. If the grant of a new trial by the trial court is based on the insufficiency of the evidence, the State has no right to appeal. *State v. Lynn,* 120 S.C. 258, 261, 113 S.E. 74, 75 (1922). On the other hand, the State may appeal the grant of a new trial when it appears it is based wholly upon an error of law. *State v. Des Champs,* 126 S.C. 416, 418, 120 S.E. 491, 492 (1923).

Although the grant or refusal of a new trial motion lies within the discretion of the trial court, "[a]n abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *State v. Walker,* 366 S.C. 643, 656, 623 S.E.2d 122, 129 (Ct.App.2005).

In this instance, I agree the State may appeal because the ruling of the trial court that the videotape is not admissible is, in my view, an error of law. The flaws in the videotape go to the weight of the evidence and not to its admissibility. The trial court's grant of a new trial was premised solely on the finding that the videotape was inadmissible. I believe that ruling to be an error of law that allows the appeal, and its prejudicial nature compels the reversal.