710 S.E.2d 84

**Elise BURKE, Respondent,**

v.

**ANMED HEALTH, Appellant.**

No. 4828.

Court of Appeals of South Carolina.

Heard Feb. 16, 2011.

Decided April 27, 2011.

Rehearing Denied June 23, 2011.

Stephen Dallas Baggett and Stephen Dallas Baggett, Jr. of Greenwood, for Appellant.

John S. Nichols and Blake A. Hewitt, both of Columbia and Joseph G. Wright, III, of Anderson, for Respondent.

FEW, C.J.

AnMed Health admitted liability to Elise Burke arising out of a preoperative procedure, and the jury returned a $250,000.00 verdict for Ms. Burke. AnMed contends the trial

court erred in refusing to excuse for cause potential jurors who were allegedly indebted to AnMed, in admitting costs of Ms. Burke's initial operation as evidence of damages, and in refusing to grant AnMed's motion for a new trial. We affirm.

Seventy-three-year-old Elise Burke arrived at AnMed to have an abdominal hysterectomy on March 22, 2005. During a routine preoperative procedure, a nurse inadvertently left a cleansing sponge inside Ms. Burke's vagina. The hysterectomy was performed later the same morning but the sponge was not discovered. After the surgery, Ms. Burke experienced increasing discomfort, discolored vaginal discharge, and an offensive odor she was unable to prevent those around her from noticing. Over the following two months, Ms. Burke contacted her doctor on six separate occasions seeking medical assistance to address these concerns. On May 23, 2005, Ms. Burke's doctor performed a vaginal exam and discovered fragments of the sponge that had been left in her body. The rest of the sponge was surgically removed the following day. Additional facts related to the issue of damages are discussed in our analysis of the trial judge's decision not to grant a new trial.

## I. Jury Venire

During pretrial motions, AnMed moved to excuse prospective jurors who owed "bad debts and judgments" to AnMed. The trial court removed the four venire members against whom AnMed held judgments but denied the request to remove others whose debts to AnMed were allegedly in default. AnMed contends this was error and asks this court to recognize a bright-line rule to categorically exclude from jury service all prospective jurors who have been referred to debt collection agencies as the result of failing to pay a debt owed to a party.

A litigant's right to an impartial jury is a fundamental principle of our legal system. S.C.Code Ann. § 14–7–1050 (2008) ("[I]n all civil cases any party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury."); *Vestry & Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co.*, 384 S.C. 441, 446, 682 S.E.2d 489, 492 (2009) ("Under South

Carolina law, litigants are guaranteed the right to an impartial jury."). To safeguard this right, prospective jurors must be excused for cause when either an automatic disqualification applies to the juror or when the trial court determines that the juror cannot be fair and impartial. However, our courts have hardly ever recognized an automatic disqualification.[1] We decline to create a new category of persons automatically disqualified from jury service in this case. Rather, we hold that when a party asks that a prospective juror be excused for cause because of a debt owed to the party, the trial court must conduct an individual analysis as to that juror to determine whether the juror should be excused. *See Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 125, 341 S.E.2d 622, 624 (1986) (stating a juror should be disqualified if it appears to the trial court "that the juror is not indifferent in the case").

In this case, the trial judge asked the jury panel every question proposed by the parties during voir dire, including whether any of the prospective jurors had a relationship with Ms. Burke; worked for AnMed; had ever been dissatisfied with treatment received from a hospital; or had sued a hospital or a physician. The trial court also asked the panel: "Does any member feel like they have any interest, sensitivity, bias or prejudice which would prevent you from being a fair and impartial juror in this case?" There was no response to

---

1. *Compare Alston v. Black River Elec. Coop.*, 345 S.C. 323, 331, 548 S.E.2d 858, 862 (2001) (adopting a per se rule disqualifying cooperative members from jury service when the cooperative is a party); *S. Bell Tel. & Tel. Co. v. Shepard*, 262 S.C. 217, 222, 204 S.E.2d 11, 12 (1974) (a stockholder in a corporation is incompetent to serve on a jury in a case in which the corporation is a party or has any pecuniary interest); with *State v. Manning*, 329 S.C. 1, 7, 495 S.E.2d 191, 194 (1997) (mere exposure to pretrial publicity does not automatically disqualify a juror); *State v. Jones*, 298 S.C. 118, 121, 378 S.E.2d 594, 596 (1989) (a prospective juror is not disqualified merely because he is a friend or acquaintance of a murder victim); *State v. Franklin*, 267 S.C. 240, 248, 226 S.E.2d 896, 899 (1976) (the fact that a venire member is a friend of the prosecuting attorney does not per se disqualify him from jury service); *State v. Hilton*, 87 S.C. 434, 439, 69 S.E. 1077, 1078 (1911) ("There is no rule of the common law, nor is there a statute, disqualifying a juror on account of his relationship to a witness, either by affinity or consanguinity, within any degree."); *Hollins v. Wal–Mart Stores, Inc.*, 381 S.C. 245, 252, 672 S.E.2d 805, 808 (Ct.App.2008) (a prior business relationship between a venire member and a party does not disqualify a juror as a matter of law).

any of these voir dire questions. AnMed specifically chose not to request additional voir dire to address the concern that some venire members may be biased as a result of being indebted to AnMed, explaining, "We are trying to avoid embarrassing jurors who might be called upon to stand up and say that—to verify whether they have this certain debt owed to the hospital." We find that the trial judge acted within his discretion when he decided not to excuse any additional jurors for cause. *See Johnson v. Nat'l Bank of Sumter*, 213 S.C. 458, 464, 50 S.E.2d 177, 180 (1948) ("It is well settled that questions . . . relating to the fitness of jurors to serve in a case are largely left to the discretion of the trial judge.").

## II. Admissibility of Cost of Hysterectomy

AnMed contends that the trial court erred in admitting the expenses AnMed charged Ms. Burke for her hysterectomy as evidence of actual damages. We find the issue is not preserved for our review.[2]

AnMed moved to exclude evidence of expenses associated with the initial surgery on the ground that the evidence was not relevant. The trial court ruled in limine that the evidence was relevant and admissible. During Ms. Burke's testimony, she sought to introduce Exhibit 8, which included the medical bills associated with her hysterectomy. The trial court asked AnMed if it had any objection to Exhibit 8, and AnMed responded, "No objection, Your Honor." The trial court admitted the exhibit.

A contemporaneous objection is typically required to preserve issues for appellate review. *Hill v. S.C. Dep't. of Health & Envtl. Control*, 389 S.C. 1, 23, 698 S.E.2d 612, 624 (2010) (citing *Sea Cove Dev., LLC v. Harbourside Cmty. Bank*, 387 S.C. 95, 108 n. 5, 691 S.E.2d 158, 165 n. 5 (2010)) (noting that a contemporaneous objection is required to preserve an issue for appellate review). However, " 'where a judge makes

---

**2.** Though Ms. Burke did not argue issue preservation, we can affirm for any reason that appears in the record. *See* Rule 220(c), SCACR; *I'On, LLC v. Mount Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment.").

a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved party does not need to renew the objection.'" *Wright v. Hiester Constr. Co.,* 389 S.C. 504, 514, 698 S.E.2d 822, 827 (Ct.App.2010) (quoting *State v. Forrester,* 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001)).

In this case, AnMed not only failed to renew its objection when evidence of the medical bills was offered, AnMed affirmatively stated that it had no objection to the introduction of this evidence. In *State v. Dicapua,* the defendant objected in limine to the admission of a videotape. 373 S.C. 452, 646 S.E.2d 150 (Ct.App.2007), *aff'd,* 383 S.C. 394, 680 S.E.2d 292 (2009). When the State later offered the video into evidence the defendant said, "no objection." 373 S.C. at 454, 646 S.E.2d at 151. This court held that the statement "no objection" constituted "a waiver of any issue [the defendant] had with the videotape." 373 S.C. at 455, 646 S.E.2d at 152. We find *Dicapua* controlling. When a party states to the trial court that it has no objection to the introduction of evidence, even though the party previously made a motion to exclude the evidence, the issue raised in the previous motion is not preserved for appellate review.

### III.  AnMed's Motions For A New Trial

■ AnMed appeals the trial court's denial of its motion for a new trial, arguing the motion should have been granted under the thirteenth juror doctrine, as a new trial absolute, or in the alternative, as a new trial nisi remittitur. We affirm.

■ Under the thirteenth juror doctrine, a trial court may grant a new trial if the judge determines the jury's verdict is "contrary to the fair preponderance of the evidence." *R.C. McEntire v. Mooregard Exterminating Servs., Inc.,* 353 S.C. 629, 633, 578 S.E.2d 746, 748 (2003). The trial court's discretion to grant or deny a new trial as the thirteenth juror is very broad. "As has often been said, the trial judge is the thirteenth juror, possessing the veto power to the Nth degree...." *Worrell v. S.C. Power Co.,* 186 S.C. 306, 313–14, 195 S.E. 638, 641 (1938). An order denying a new trial on this theory will hardly ever be reversed. As this court recently stated, " 'to reverse the denial of a new trial motion under [the

thirteenth juror doctrine,] we must, in essence, conclude that the moving party was entitled to a directed verdict at trial.' " *Curtis v. Blake*, 392 S.C. 494, 709 S.E.2d 79 (S.C.Ct.App.2011) (Shearouse Adv. Sh. No. 6 at 90) (quoting *Parker v. Evening Post Publ'g Co.*, 317 S.C. 236, 247, 452 S.E.2d 640, 646 (Ct.App.1994)).

A trial judge also has the power to grant a new trial absolute. However, this power may be exercised only when the verdict "is shockingly disproportionate to the injuries suffered and thus indicates that passion, caprice, prejudice, or other considerations not reflected by the evidence affected the amount awarded." *Becker v. Wal–Mart Stores, Inc.*, 339 S.C. 629, 635, 529 S.E.2d 758, 761 (2000).[3] A jury's determination of damages is entitled to "substantial deference." *Todd v. Joyner*, 385 S.C. 509, 517, 685 S.E.2d 613, 618 (Ct.App.2008), *aff'd*, 385 S.C. 421, 685 S.E.2d 595 (2009). The decision to grant or deny a "new trial motion rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." *Brinkley v. S.C. Dep't of Corrs.*, 386 S.C. 182, 185, 687 S.E.2d 54, 56 (Ct.App.2009).

If the trial court determines that the verdict is "merely excessive," the court has the power to reduce the verdict by granting a new trial nisi remittitur. "A motion for a new trial nisi remittitur asks the trial court to reduce the verdict because the verdict is merely excessive." *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006). Even as to a new trial nisi remittitur, the trial judge's

---

3. Courts have used varying language to describe the circumstances in which a circuit judge may grant a new trial absolute. *See O'Neal v. Bowles*, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993) ("If the amount of the verdict is *grossly* inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute."); *Chapman v. Upstate RV & Marine*, 364 S.C. 82, 89, 610 S.E.2d 852, 856 (Ct.App. 2005) (" 'The trial judge must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives.' ") (quoting *Vinson v. Hartley*, 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct.App.1996)).

discretion is broad. "The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion." *Id.; see also Bailey v. Peacock,* 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995) ("If an award is merely inadequate or unduly liberal, the trial judge alone has the discretion to grant a new trial *nisi additur.*").

We agree with AnMed that the jury's verdict of \$250,000.00 is generous.[4] However, as an appellate court, we sit neither to determine whether we agree with the verdict nor to decide whether we agree with the trial judge's decision not to disturb it. As described above, we employ a highly deferential standard of review when considering the trial judge's ruling on each of the grounds for a new trial. In exercising this deference, we recognize the unique position of the trial judge to hear the evidence firsthand, evaluate the credibility of the witnesses, and assess the impact of the wrongful conduct on the plaintiff in terms of damages.

We find this deference is particularly appropriate on the facts of this case. The distress Ms. Burke endured is certainly compelling. We believe the trial court was uniquely able to understand Ms. Burke's damages, and likewise, uniquely able to evaluate the appropriateness of the jury's award. Thus, though we recognize the generosity of the award, we find the trial judge's ruling to deny the motion for a new trial was within his discretion.

Ms. Burke testified about six visits she made to her doctor attempting to identify the reason for her increasing discomfort after the hysterectomy. She first went to her doctor's office on April 13 with vaginal discharge, slight odor, and pain in her right side. She returned on April 18 and again complained of the pain she was experiencing. She went back to the doctor on April 21, and described "pain in [her] side," "real black vaginal discharge" and said the "odor was terrible."

On May 3, a nurse who cared for Ms. Burke called the doctor on her behalf to describe the pain Ms. Burke was experiencing. Ms. Burke testified that the nurse noticed the odor "which was very embarrassing." On May 6, she went to her doctor for a fifth time and complained of brown vaginal

---

4. The cost of the hysterectomy was \$21,558.83, and the cost of the procedure to remove the sponge was \$7,754.20.

discharge, strong odor, and pain in her side. Ms. Burke described the odor, "even though I had taken a bath just before I left home and everything, you just couldn't get away from it, it was so bad." Lillie Rumsey, Ms. Burke's friend, testified, "She had a terrible odor. It was terrible."

Kenneth Stone, Ms. Burke's son, testified, "she'd drive down the road with me taking her to the doctor's office apologizing and crying because she was ashamed of the odor that she had." Stone further explained, "she was sitting there crying she was in so much pain." On May 23, Ms. Burke's doctor finally performed a vaginal examination. Ms. Burke testified, "And when he did examine me, he pulled on something in that right side where I had been having all that pain. And I almost came off the table it hurt so bad."

Ms. Burke told the jury about the impact the experience had on her physically and emotionally:

I had suffered the whole time for nine weeks and trying to tell him that something was wrong, and he did nothing about it. And it was so embarrassing—I mean, when my friends would come in—from the odor. And I would sit real still in my recliner. I was afraid to move for fear they would detect the odor and all even though I kept myself as clean as possible. I never had took so many showers, I don't think, in my life in one day. And also changing pads. I think I almost bought out Wal–Mart buying pads. I had to use so many because I was trying to keep down, you know, the odor.

Finally, Ms. Burke testified that she was still suffering from the effects of the injury at the time of the trial—more than three years after the surgery. She testified that she "still [has] pain in [her] side occasionally" and is now "weak" and requires help to complete household chores. Stone testified that "since [the surgery], she's a completely different woman. . . . [S]he hasn't driven since the surgery whatsoever."

We find the trial court did not abuse its discretion in deciding to leave the jury's verdict undisturbed.

### IV.  Other Issues

AnMed contends the trial court erred in admitting the testimony of Cynthia Hurley, a surgical nurse who testified about the general process she follows in performing similar

procedures, the location at which the sponge was left inside Ms. Burke's body, and related potential side effects. AnMed contends that because the case went to trial only on the question of damages the evidence was inadmissible under Rules 402 and 403, SCRE. We find that the trial court was within its discretion to admit the evidence as context for the jury to understand the injury Ms. Burke suffered and the resulting damages. *See Hartfield v. Getaway Lounge & Grill, Inc.,* 388 S.C. 407, 413, 697 S.E.2d 558, 561 (2010) ("The admission of evidence is within the sound discretion of the trial judge and will not be reversed absent a clear abuse of discretion.").

AnMed contends the trial court erred in denying its request to charge the jury: "A plaintiff in a medical malpractice action cannot recover damages for his or her original injury." This was a request for a specific charge to be given on proximate cause. While a trial court must charge the current and correct law, *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000), there is no error in refusing "a specific request to charge when the substance of the request is included in the general instructions." *Burroughs v. Worsham,* 352 S.C. 382, 391–92, 574 S.E.2d 215, 220 (Ct.App.2002). AnMed concedes the charge was correct on the law of proximate cause.

**AFFIRMED.**

SHORT and LOCKEMY, JJ., concur.